STATE v. JIMMY DEXTER COVINGTON.

(Filed 22 May 1968.)

**1. Criminal Law § 166—**

Assignments of error not set out in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**2. Criminal Law § 66—**

A witness who was present at defendant's unlawful arrest is not thereby precluded from making a courtroom identification of defendant as the person who robbed him where the identification is based on the robbery itself and not on what occurred during the arrest, and where evidence before the jury of what occurred at the time of defendant's arrest was first elicited and thereafter developed by defense counsel's cross-examination of State's witnesses.

**3. Arrest and Bail §§ 3, 5; Criminal Law § 84—**

Where police officers who have no arrest warrant or search warrant forcibly enter a motel room and arrest the occupant, the officers having a reasonable belief that he has committed a felony but not having first de-

manded and been denied admittance into the motel room, the entry is unlawful, G.S. 15-44, and articles discovered and seized as a result of the unlawful entry are inadmissible into evidence.

**4. Robbery § 5—**

An instruction to the effect that defendant might be convicted of armed robbery if the jury should find that he took personal property from the prosecuting witness by the use of force or intimidation sufficient to create an apprehension of danger is erroneous in failing to instruct the jury as to the elements of armed robbery as distinguished from common law robbery, since to convict for armed robbery the jury must find that the life of the victim was endangered or threatened by the use or threatened use of firearms or other dangerous implement or means. G.S. 14-87.

**5. Same—**

In a prosecution for three separate offenses of armed robbery, an instruction to the effect that both defendants would be guilty if either defendant robbed either of three named victims, such instruction not being predicated upon a jury finding that defendants were acting in concert before one would be responsible for the criminal acts of the other, is erroneous since a verdict of guilty in response to such instruction would leave undetermined the jury's findings as to what each defendant had done and which victims had been robbed.

**6. Criminal Law § 23—**

Where one of two codefendants, in the absence of the jury, withdraws his pleas of not guilty at the conclusion of the State's evidence and enters pleas of guilty, the continuation of the trial and instruction of the jury as if both defendants remained on trial is approved.

APPEAL by defendant Jimmy Dexter Covington from *Bailey, J.,* September 1967 Criminal Session of DURHAM.

Criminal prosecutions on three bills of indictment, each charging that Jimmy Dexter Covington and Bobby Devon McDougald on July 26, 1967, committed the crime of armed robbery as set forth therein, *viz.:*

In No. 11073, the indictment charged Covington and McDougald with "unlawfully, wilfully and feloniously having in his *(sic)* possession and with the use and threatened use of firearms, and other dangerous weapon, implement and means, to wit: a pistol, whereby the life of David E. Whitfield, was threatened and endangered, did unlawfully, forcibly and feloniously take, steal and carry away, the sum of $22.00 in cash money from the person of David E. Whitfield," etc.

In No. 11074, the indictment charged Covington and McDougald with "unlawfully, wilfully and feloniously having in his *(sic)* possession and with the use and threatened use of firearms, and other dangerous weapon, implement and means, to wit: a pistol, whereby the life of Calvin Roberson, was threatened and endangered, did unlaw-

fully, forcibly and feloniously take, steal and carry away, the sum of $50.00 in money of the value of $50.00 in good U. S. Currency, from the person of Calvin Roberson," etc.

In No. 11075, the indictment charged Covington and McDougald with "unlawfully, wilfully and feloniously having in his *(sic)* possession and with the use and threatened use of firearms, and other dangerous weapon, implement and means, to wit: a pistol, whereby the life of Walter J. Cross, an employee of South State Motels, Inc., trading as Voyager Inn of Durham, was threatened and endangered, did unlawfully, forcibly and feloniously take, steal and carry away, the sum of $474.00 in money of the value of $474.00 in U. S. Currency from the South State Motels, Inc., trading as Voyager Inn of Durham," etc.

Each defendant pleaded not guilty to each of said three bills of indictment. The three cases were consolidated for trial.

At the conclusion of the State's evidence, McDougald, in the absence of the jury, with reference to each of the three bills of indictment, withdrew his plea of not guilty and tendered a plea of guilty of common law robbery, which pleas were accepted by the State. However, the trial continued in all respects as if both defendants were on trial.

The State's evidence, in brief summary, tends to show the facts narrated below.

About 1:30 a.m., Wednesday, July 26, 1967, Covington and McDougald, with pistols, forced Walter J. Cross, the desk clerk at Voyager Inn in Durham, to deliver to them the contents ($74.35) of the cash drawer at the counter in the lobby, also to open the safe in the back office and to deliver to them the contents ($400.00) of two cash drawers taken therefrom, all of the money being the property of Cross's employer, South State Motels, Inc., the operator of said Voyager Inn. Then they made Cross face the wall. While in this position, Cross was struck on the back of the head and rendered unconscious.

Soon thereafter David E. Whitfield, accompanied by Calvin Roberson, drove to said Voyager Inn to see a business associate. Upon finding he was not in his motel room, Whitfield drove to the lobby to ask whether a message had been left for him. A "reddish maroon" 1965 Chevrolet Impala, two-door hardtop, with a North Carolina license tag, was parked in the driveway under the canopy at the motel entrance. The right rear corner thereof was damaged. When Whitfield "tooted his horn," the 1965 Chevrolet was pulled to the left. This enabled Whitfield to "pull up under the canopy."

Whitfield saw no one when he entered the lobby. Soon thereafter

he was confronted by Covington and McDougald with the words, "Put your hands up." McDougald took $22.00 from Whitfield's wallet. McDougald went outside and brought Roberson into the motel lobby where Covington and McDougald took $50.00 from Roberson's wallet. They made Whitfield and Roberson lie on the floor. Then they backed out of the motel lobby, got in said 1965 Chevrolet and left. Whitfield and Roberson found Cross in the back office on the floor, "in a groggy condition." Soon thereafter Cross called the police.

When Cross was robbed and when Whitfield and Roberson were robbed, *McDougald* had the pistol identified and admitted in evidence as State's Exhibit No. 4 *or* one that looked "exactly like" it, and Covington had "a chrome or nickel-plated revolver."

Additional facts, including those relating to the arrest of Covington and McDougald about 5:00 a.m., Friday, July 28, 1967, and the finding of State's Exhibit No. 4 (pistol), will be set forth in the opinion.

Neither Covington nor McDougald testified.

Evidence offered by Covington tended to show that he and McDougald were together on the night of July 26, 1967, from about 7:30 p.m. until midnight, at a card party in the home of one Manly Mitchell; and that Covington then purchased the gun identified as State's Exhibit No. 4 or "one very similar to it in all respects" from one Raymond Bynam.

At the conclusion of the evidence, the court instructed the jury as if both Covington and McDougald were then on trial. As to Covington, the jury returned a verdict of "guilty as charged" with reference to each of the three bills of indictment. After accepting the jury's verdicts as to Covington, the court explained to the jury McDougald's earlier plea and on account thereof the jury would not return a verdict as to McDougald in any of the three cases.

In No. 11073, as to Covington, the court pronounced judgment imposing a prison sentence of thirty years.

In No. 11074, as to Covington, the court pronounced judgment imposing a prison sentence of not less than one nor more than ten years, this sentence to commence upon expiration of the sentence in No. 11073.

In No. 11075, as to Covington, the court pronounced judgment imposing a prison sentence of thirty years, this sentence to run concurrently with the thirty-year sentence imposed in No. 11073.

Covington excepted to said judgments and appealed. As to McDougald, judgments were pronounced. McDougald did not except or give notice of appeal and is not a party to the present appeal.

*Attorney General Bruton and Deputy Attorney General Moody for the State.*

*C. C. Malone, Jr., and C. E. Johnson for defendant appellant.*

BOBBITT, J. Appellant, Covington, assigns as error the denial of his motion for judgment as in case of nonsuit. This assignment is not set out in his brief and is deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810. There was ample evidence to require submission to the jury and to support a verdict of guilty as to the charge of armed robbery set forth in each of the three bills of indictment.

Appellant, Covington, assigns as error the rulings on evidence discussed below.

A pistol, marked for identification as State's Exhibit No. 4, was presented to Cross, a State's witness, during direct examination. Defendants objected and, in the absence of the jury, "moved to suppress the evidence of the weapon on the grounds that it was obtained by reason of an illegal search."

In the absence of the jury, Ralph D. Seagroves, a Durham Police Officer, testified in substance as narrated below.

On Friday, July 28, 1967, between 4:45 and 5:00 a.m., Seagroves, accompanied by other police officers, went to the Holiday Inn, Downtown, on Chapel Hill Street in Durham. Seagroves had seen a 1965 Chevrolet, "red or burgundy," in the parking lot. After talking with the night clerk, the officers got in touch with Whitfield; and, at the request of the officers, Whitfield accompanied the officers to separate but adjoining motel rooms to see if Whitfield could identify either of the occupants as a participant in the Voyager Inn robberies of July 26th.

The officers knocked on the door of the motel room occupied by McDougald. When McDougald came to the door, bright lights from the police car were thrown on him and Whitfield said, "That is one of them."

After entering and staying briefly in McDougald's room, the officers proceeded from the sidewalk to the outside door of the adjoining motel room. It was "chain locked." The officers pushed open the door as far as the chain would permit. Big lights from the police car were directed through this opening into the room. Through this opening Whitfield identified the person lying on the bed as the other man involved in the Voyager Inn robberies. It was Covington. Unable to gain entrance, the officers "just pulled out" the chain, thereby breaking the chain lock, and entered Covington's room. Covington was getting out of bed. State's Exhibit No. 4 was on a table near Coving-

ton's bed. The officers seized and retained it. Covington and Mc-Dougald, having been identified in this manner by Whitfield, were arrested and taken into custody.

None of the victims of the robberies knew either Covington or McDougald by name. The officers were armed. The officers had no warrant of arrest and had no search warrant.

The court, after hearing said testimony of Seagroves, made no findings of fact. The court overruled said motion to suppress and re-called the jury. Thereupon, before the jury, the direct examination of Cross was resumed. Cross testified *inter alia* that the pistol ex-hibited to him, marked for identification as State's Exhibit No. 4, "looks exactly like the gun *McDougald* held on him on the 26th day of July, 1967." (Our italics.)

Whitfield, a State's witness, when asked on direct examination if he could identify the two men who had robbed him, touched the shoulder of Covington and of McDougald. Thereupon, in the absence of the jury, each defendant moved "to suppress any identification by this witness as *(sic)* for the reason that the identification here be-ing made is identification made as a result of an illegal arrest." The motion(s) were overruled and defendants excepted.

On direct examination, Whitfield was not asked and did not tes-tify as to what occurred at the Holiday Inn on July 28th when Cov-ington and McDougald were arrested. He did testify on direct ex-amination that, on July 26th when he and Roberson were robbed, *McDougald* had the pistol marked for identification as State's Ex-hibit No. 4 "or one like it."

On cross-examination of Whitfield, defense counsel elicited *for the first time in the presence of the jury* testimony as to what oc-curred on July 28th at said Holiday Inn when Covington and Mc-Dougald were arrested. Under cross-examination, and without ob-jection or motion to strike, Whitfield testified in substance as fol-lows: On July 28, 1967, around 4:30 a.m., he received a call from the Police Station "that two suspects fitting the description he had given had just checked into the Holiday Inn," and that the police officers wanted him to come down and identify them. Upon arrival at the Holiday Inn around 5:00 a.m. he saw "an automobile resembling the one he saw at the Voyager Inn," and was told that the car "belonged to the suspects." In response to a knock on his door, McDougald opened the door and thereupon he (Whitfield) identified McDougald as one of the participants in the Voyager Inn robberies of July 26th. The door to Covington's room was closed. Police Officers opened it "with their shoulders." He did not recognize Covington "until his door had been opened."

Roberson, a State's witness, testified "he recognizes State's Exhibit Four." Roberson gave no other testimony with reference thereto.

The State offered Seagroves who testified, in the presence of the jury, in substance as follows: On July 28, 1967, around 5:00 a.m., he, with "Lt. Evans, Officer Roop, Officer Clayton, Officer Lewis and Mr. Whitfield went to the Holiday Inn, Downtown."

The court, apparently *ex mero motu,* instructed the jury Seagroves' further testimony was received "solely for the purpose of corroborating Mr. Whitfield and only to that extent." Thereupon, Seagroves testified both on direct and on cross-examination to what happened on July 28th at said Holiday Inn, without objection and without motion to strike except as follows: Defendants objected to the statement of Seagroves that "he saw State's Exhibit Four on the morning of the 28th."

The testimony of Seagroves in the presence of the jury, both on direct and on cross-examination, is in substantial accord with the testimony of Whitfield as to what occurred on July 28th at said Holiday Inn with these exceptions: Seagroves testified he "turned the latch" on Covington's door and "it opened"; that when the "spotlights" were turned into Covington's room, Whitfield said, "That is the other one"; that thereafter he "hit the door and it unlocked"; and that the officers then entered Covington's room.

On recross-examination, Seagroves testified that "the manager of Holiday Inn reported to him the fact that persons of the description he (Seagroves) had given him earlier were there."

There is no merit in appellant's contention that Whitfield was precluded from 'testifying at trial* as to the identity of the men who robbed him on July 26th on account of asserted unlawful conduct of the officers on July 28th in forcibly opening the door and entering his motel room. Whitfield did not identify Covington *at trial* on the basis of what occurred on the morning of July 28th at the Holiday Inn but on the basis of what he saw at the Voyager Inn on the morning of July 26th. Moreover, the evidence before the jury as to what occurred on the morning of July 28th at the Holiday Inn was first elicited by defense counsel in the cross-examination of Whitfield and was thereafter developed in detail by defense counsel in the further cross-examination of Whitfield and in the cross-examination of Seagroves.

The only serious question is whether the court should have sustained defendants' objections to the admission in evidence of State's Exhibit No. 4 on the ground the officers seized it as the result of an illegal search. This question must be resolved in the light of statutory provisions discussed below.

G.S. 15-41 provides: "A peace officer may *without warrant* arrest a person: (1) When the person to be arrested has committed a felony or misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence; (2) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody." (Our italics.)

All the evidence is to the effect that no arrest was made until after the officers had *forced their way* into Covington's motel room. Articles in Covington's motel room, specifically State's Exhibit No. 4, if discovered and seized by means of an unlawful forcible entry, would not be admissible on the theory of discovery and seizure incidental to a lawful arrest.

Whether forcible entry by the officers into Covington's motel room was lawful must be considered and determined with reference to G.S. 15-44, which provides: *"If a felony* or other infamous crime *has been committed,* or a dangerous wound has been given *and there is reasonable ground to believe that the guilty person is concealed in a house,* it shall be lawful for any sheriff, coroner, constable, or police officer, *admittance having been demanded and denied,* to break open the door and enter the house and arrest the person against whom there shall be such ground of belief." (Our italics.)

There was evidence tending to show: The robberies of Cross-South State Motels, Inc., Whitfield and Roberson at the Voyager Inn on July 26th by two men had been reported to the officers. Whitfield had given the officers a description of each of the two men and also of the car they had used at the time of the robberies. The officers had passed this information to the night clerk at the Holiday Inn. The night clerk notified the officers that two men answering these descriptions were occupying adjoining motel rooms. A 1965 Chevrolet in the parking lot resembled closely the car Whitfield had described. McDougald opened the door to his motel room in response to a knock on his door and was identified immediately by Whitfield as one of the two men involved in the robberies at Voyager Inn on July 26th.

With five armed officers present, Covington's opportunity for escape was minimal. It would have been appropriate for the officers to have obtained a warrant for the arrest of the registered occupant of the room or a search warrant. However, under the circumstances, the evidence was sufficient to support a finding that the officers had reasonable ground to believe the occupant of the room adjoining that of McDougald was the other man involved in the Voyager Inn rob-

beries of July 26th. Even so, there is no evidence whatever that admittance to Covington's motel room had "been demanded and denied." Under G.S. 15-44 admittance, in the absence of hostile action from inside the dwelling prior to such demand, must be "demanded and denied" before a forcible entry is lawful where, as here, there is neither a search warrant nor a warrant for the arrest of an occupant or supposed occupant. Indeed, *State v. Mooring,* 115 N.C. 709, 20 S.E. 182, seems to support the view that this requirement would apply even though the officers have a search warrant or warrant of arrest. See 15 N.C.L.R. 101, 125. Compliance with this requirement serves to identify the official status of those seeking admittance. The requirement is for the protection of the officers as well as for the protection of the occupant and the recognition of his constitutional rights.

Since a new trial is awarded for reasons stated below, we need not determine whether the admission in evidence of State's Exhibit No. 4 was of such prejudicial impact as to constitute ground for a new trial. Indeed, the probative value thereof is questionable. State's Exhibit No. 4 added little, if anything, by way of identification of defendants as the men who perpetrated the robberies at the Voyager Inn. Defendants were positively identified by Cross and by Whitfield and by Roberson. While the probative value of State's Exhibit No. 4 seems unimpressive, the actual display of the pistol as an exhibit during the progress of the trial might well have been a prejudicial circumstance.

Finally, we consider assignments of error relating to the court's charge.

The court's final instruction with specific reference to armed robbery as charged in the three bills of indictment was as follows:

"So, ladies and gentlemen of the jury, I charge you that *(sic)* you find from the evidence and beyond a reasonable doubt, the burden being upon the State of North Carolina to so satisfy you that the defendants — that *either* the defendant McDougald *or* the defendant Covington — took personal property *either* from Mr. Whitfield *or* from Mr. Roberson *or* from the South State Motel, Incorporated, *or* either of them, that at the time of the taking *either* Mr. Covington *or* Mr. McDougald used force or intimidation sufficient to create *an apprehension of danger* in the person from whom the property was taken, and if you further find that at the time of the taking *either* Mr. Covington *or* Mr. McDougald had the intent permanently to deprive *either* Mr. Whitfied *or* Mr. Roberson *or* the South State Motel of its property permanently and to convert it to the use of *either* Mr. McDougald *or* Mr. Covington, *or* both of them; and if

you further find from the evidence and beyond a reasonable doubt, the burden being upon the State of North Carolina in all of these things to so satisfy you that at the time of the taking *either* of the accused was in the possession of and threatened, or used to threat, some dangerous weapon, I say if you have found all of those things as to Mr. McDougald, it would be your duty to return a verdict of guilty as charged in the bill of indictment." (Our italics.)

Defendant excepted to and assigns as error the quoted excerpt from the charge.

Immediately following the quoted excerpt, the court instructed the jury as follows: .

"Now, if you have found all of those things as to Mr. Covington, it would be your duty to return a verdict as to him of guilty as charged in the bill of indictment.

"Now, if you fail to find all of those things as to *either* of the defendants, you will then consider whether or not that defendant might be guilty of common law robbery. The only difference between common law robbery and armed robbery is that in common law robbery there is no consideration as to the use of a weapon. That is to say that if you find that *either* accused took personal property from another, or in his presence, that they used force or intimidation sufficient to create *an apprehension of danger,* and that at the time of the taking, *they* had the felonious intent to permanently deprive the owner of the property, but you do not find the use of a weapon, then you would have found that accused guilty of common law robbery. You will consider this only if you find the accused not guilty of armed robbery." (Our italics.)

Near the beginning of the charge, the court read to the jurors the statute on which the three indictments are based, to wit, G.S. 14-87, which provides: .     .

"Any person or persons who, having in possession or with the use or threatened use of *any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened,* unlawfully .takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than five nor more than thirty years." (Our italics.)

Prerequisite to conviction for armed robbery as charged in each bill of indictment, the jury must find from the evidence beyond a

reasonable doubt that the *life* of the victim was *endangered* or *threatened* by the *use* or *threatened use* of "firearms or other dangerous weapon, implement or means." A conviction of "Guilty as charged" may not be based on a finding that the accused "used force or intimidation sufficient to create an apprehension of danger." This is a critical distinction between armed robbery as defined in G.S. 14-87, which is punishable by imprisonment for not less than five nor more than thirty years, and common law robbery, which is punishable by imprisonment not exceeding ten years. *State v. Keller,* 214 N.C. 447, 199 S.E. 620; *State v. Stewart,* 255 N.C. 571, 122 S.E. 2d 355; *State v. Ross,* 268 N.C. 282, 150 S.E. 2d 421.

The challenged instruction was also erroneous in the respect discussed below.

The challenged instruction is not predicated on a finding by the jury that Covington and McDougald were acting in concert, each aiding and abetting the other, before one would be responsible for the criminal acts and conduct of the other. The challenged instruction is that both defendants would be guilty if *either* Covington *or* McDougald robbed either Cross-South States Motels, Inc., *or* Whitfield, *or* Roberson. A verdict of guilty in response to this instruction would leave undetermined what, if anything, either Covington or McDougald had done, and would leave undetermined whether the jury found that Cross-South States Motels, Inc., or Whitfield, or Roberson, had been robbed. Certainly, a finding of guilty in response thereto would not establish that all had been robbed. Notwithstanding, the jury was asked for and returned separate verdicts of guilty as charged as to each of the three separate bills of indictment and separate judgments, as set out in our preliminary statement, were pronounced.

For the reasons stated, appellant is awarded a new trial. However, it seems appropriate to refer with approval to the fact the trial was not disrupted by McDougald's pleas of guilty but proceeded as stated in such manner as to avoid prejudice to Covington, the remaining defendant, on account of McDougald's said pleas.

New trial.