State v. Evans and State v. Britton and State v. Hairston

from which the court could conclude the incident before the jury was selected had any bearing on the verdict or in Mr. Hinson's participation in it. The cases cited, and others of like import, hold to the contrary. The cases relied on by the defendant do not support his contention. He cites as authority for the motion these cases: *State v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620; *State v. Grayson*, 239 N.C. 453, 80 S.E. 2d 387; *State v. Manning*, 251 N.C. 1, 110 S.E. 2d 474; *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9; *State v. Wagstaff*, 235 N.C. 69, 68 S.E. 2d 858. These cases do not offer support for a motion for a mistrial. Neither the cases cited, nor any others with which we are familiar appear to justify or authorize a mistrial on a showing so flimsy and nebulous as the occurrence which is the basis for Assignment of Error No. 2.

In the trial and judgment we find

No error.

STATE OF NORTH CAROLINA v. NATHANIEL EVANS

STATE OF NORTH CAROLINA v. THOMAS ADDISON BRITTON

STATE OF NORTH CAROLINA v. HAYWOOD BERNARD HAIRSTON

No. 30

(Filed 13 October 1971)

1. Robbery § 1— armed robbery — proof that a person's life was endangered

For a conviction of robbery with firearms or other dangerous weapons, the State must show beyond a reasonable doubt that the life of a person was endangered or threatened by the defendant's, or his accomplice's, possession, use, or threatened use of a firearm or other dangerous weapon, implement or means.

2. Robbery § 1— attempted armed robbery — elements of proof

Proof of a defendant's presence in a place of business, of his possession therein of a firearm, and of his intent to commit a robbery is not sufficient to support a conviction of attempted armed robbery, for it omits the essential elements of (1) a taking or attempt to take personal property and (2) the endangering or threatening of the life of a person. G.S. 14-87.

State v. Evans and State v. Britton and State v. Hairston

3. **Criminal Law § 104— motion for nonsuit — consideration of defendant's evidence**

On motion for judgment of nonsuit in a criminal case, the evidence of the defendant is considered only to the extent that it is favorable to the State or for the purpose of explaining or making clear the State's evidence, insofar as it is not in conflict therewith.

4. **Criminal Law §106— motion for nonsuit — sufficiency of the evidence**

There must be substantial evidence of all material elements of the offense charged in order to withstand a motion for judgment of nonsuit.

5. **Criminal Law § 106— motion for nonsuit — sufficiency of evidence raising only a suspicion or conjecture**

If the evidence is sufficient only to raise a suspicion or conjecture as to whether the offense charged was committed, the motion for nonsuit should be allowed even though the suspicion so aroused by the evidence is strong.

6. **Robbery § 4— attempted armed robbery — guilt of codefendant who made no threats — sufficiency of evidence**

In a prosecution of three defendants for attempted armed robbery, the State's evidence that one of the three defendants entered a restaurant, without a weapon, and stood at the counter on which the cash register sat, that he could not open or reach into the register standing in that position, and that he thereafter left the restaurant with his codefendants without having made any threats to or demands on the employees, *held* insufficient to support a jury finding of defendant's guilt.

7. **Robbery § 4— attempted armed robbery — guilt of defendants who did not place any life in danger**

In a prosecution of three defendants for attempted armed robbery, the State's evidence that one of the defendants walked into the kitchen area of a restaurant and said to an employee, "This is a holdup; no one's going to get hurt," and that another defendant thereafter entered the restaurant with a loaded but breeched shotgun cradled on one arm, *held* insufficient to support a jury finding of the defendants' guilt, where (1) the defendant with the shotgun, upon the remonstrance of a customer, stated that he merely wanted to settle an argument with the defendant in the kitchen; (2) the defendant then removed the shell from the gun and left the restaurant; (3) the employees who overheard the threat merely treated it as a joke and continued with their work; (4) the defendants paid for an order of chicken and left the restaurant without having made any demands on the employees; and (5) the defendants parked their car around the corner from the restaurant and were eating the chicken when the police officers arrived.

APPEALS by each of the defendants from *Crissman, J.*, at the 24 August 1970 Criminal Session of FORSYTH, heard prior to determination by the Court of Appeals.

By separate indictments, each proper in form, the defendants were charged with an attempt to commit robbery with the

use of firearms. Without objection, the cases were consolidated for trial. Each defendant was found guilty and sentenced to a term of five years in the State's Prison. Each appealed. Their assignments of error, separately stated but substantially identical, occupy 140 pages of the record. They relate to the denial of their respective motions for judgment of nonsuit, to various rulings on the admission of evidence and to portions of the charge to the jury.

In substance, the evidence for the State was as follows:

On Sunday, 26 July 1970, about 3 p.m., Mrs. Eckert was in charge of a "quick food takeout restaurant," owned by Maryland Fried Chicken, Inc., and was seated at a table in the dining area doing some book work. The only other occupants of the building were Jo Ann Douglas, who was in the serving area, and her brother, Gary Douglas, who was washing walls in the kitchen.

The three defendants came in Evans' automobile to the pickup window. After a conversation with Miss Douglas concerning various packages of chicken available, the driver asked if they might come into the building to eat and were told that they could. Thereupon, Evans and Britton came in, leaving Hairston in the car, the motor of which was left running. Britton stood at the counter upon which the cash register sat but in this position he could not open or reach into the cash register. Their order for a nine-piece box of chicken having previously been given to Miss Douglas, she began to prepare it and Evans walked into the kitchen area. Hairston then came in, carrying over one arm a breeched shotgun loaded with a shell. He was followed into the building by Mr. Benson, a regular customer from the neighborhood.

Hairston merely walked into the building and remained standing two or three paces from the door. He addressed no remark to anyone except Mr. Benson, who asked what he was doing in the building with a shotgun. Hairston replied that he had "an argument with someone in the back of the building," not specifying whom. When Mr. Benson, stating that he was just a customer, told Hairston to take the shotgun outside or unload it and "go have your argument," Hairston, saying no more, removed the shell from the gun, put it in his pocket and left the building, followed by Britton and Evans. Stopping a few paces from the building, the three discussed something

among themselves, then went to the automobile, put the shotgun in the trunk and drove out into the street.

Meanwhile, Evans, in the kitchen, said to Gary Douglas, "This is a holdup; no one's going to get hurt." Both Mrs. Eckert and Miss Douglas heard this statement but Mr. Benson did not. (Evans, who testified in his own behalf, denied making this statement, saying that his only reason for going into the kitchen was that he was looking for a rest room and that he made no statement to Gary Douglas except to communicate to him Evans' urgent need to find a rest room, in response to which Gary Douglas merely laughed.)

Following Evans' remark to Gary Douglas, whatever it was, Mrs. Eckert did nothing, Gary Douglas continued to wash the kitchen walls and Miss Douglas "kept on fixing the chicken." When Gary Douglas heard Evans' remark, he "just ignored" Evans and "didn't take it serious," but just "kind of laughed it off."

No one, either defendant or employee, made any move to open the cash register. Britton, standing in front of the counter on which the cash register stood, never said or did anything. Having completed the packing of the box of chicken, Miss Douglas walked from behind the counter and handed Evans the box of chicken. Thereupon, he handed two one-dollar bills to Mrs. Eckert. Miss Douglas told him the price was $2.58, so Evans handed her the additional 58 cents. The defendants then left the building. After they drove out into the street and there stopped, Mrs. Eckert phoned the police.

(Each defendant testified that Britton had just been picked up by the other two defendants, five or ten minutes before the entry into the building, for the purpose of giving him a ride to his destination after Evans had gotten something to eat, and that during that interval there was no conversation of consequence among them. Evans and Hairston testified that they had been together, attending a party and riding about, throughout the preceding night and morning and that the shotgun was in their possession as a pawn to secure a loan made by Hairston to its owner in the course of their nocturnal travels. Hairston testified that he, arousing himself from a short rest in the back seat of the car after Evans and Britton had entered the building, found the money which he thought he had had

in his pockets was gone, and, thereupon, took the shotgun and entered the building in search of Evans, whom he suspected of having taken his money.)

In response to Mrs. Eckert's call, police officers arrived and, being told by the occupants of the building that the three defendants, after driving out to the street in their car, had stopped and backed around the corner, went in search of them. They found the defendants parked in a shady spot "just around the corner" eating fried chicken. When the police car drove up, Evans got out of his car and, before the officers said anything, asked them if they had some "jumper cables" with which they might help him start his car which had stalled. The officers arrested the defendants, found the unloaded shotgun in the trunk of the car, by use of a key voluntarily given them by Evans, and two shells in Hairston's pocket.

Miss Douglas testified that she was not frightened by Evans' statement, that she did not see Hairston and the shotgun until he left the building and she "personally had not put any significance" upon what she had seen and heard, and that "at no time during the time that these defendants were in or about" the premises was she "apprehensive about any danger" to life or property. Gary Douglas testified, "At no time when these defendants were in our premises did I have any feeling of fear or threat to me or to my property." He also did not observe the shotgun until after the defendants left the building.

Each defendant took the witness stand in his own behalf. Their testimony and the testimony of other witnesses called by them added nothing to the strength of the case for the State.

*Attorney General Morgan, Assistant Attorney General Harris and Staff Attorney Satisky for the State.*

*R. Lewis Ray for Defendant Nathaniel Evans.*

*Larry L. Eubanks for Defendant Thomas Addison Britton.*

*Leslie G. Frye for Defendant Haywod Bernard Hairston.*

LAKE, Justice.

G.S. 14-87 provides: "Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes

or attempts to take personal property from another or from any place of business * * * or any other place where there is a person or persons in attendance * * * or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony * * * ." The offense is complete if there is either a taking or an attempt to take the personal property of another by the means and in the manner prescribed by the statute, but there must be one or the other. *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496.

[1, 2] For a conviction of robbery with firearms or other dangerous weapons, the State must further show beyond a reasonable doubt that the life of a person was endangered or threatened by the defendant's, or his accomplice's, possession, use or threatened use of a firearm or other dangerous weapon, implement or means. *State v. Stewart,* 255 N.C. 571, 122 S.E. 2d 355. Proof of this additional element is, of course, not required for conviction of the offense of common law robbery. Proof of the defendant's presence in a place of business, his possession therein of a firearm and his intent to commit the offense of robbery is not sufficient to support a conviction of the offense described in G.S. 14-87, for it omits the essential elements of (1) a taking or attempt to take personal property, and (2) the endangering or threatening of the life of a person.

The respective indictments charge that these defendants, "having in possession and with the use and threatened use of a certain firearm, to wit, a shotgun, whereby the life of Martha Eckert was endangered and threatened, did commit an assault upon and put in bodily fear the said Martha Eckert and by the means aforesaid and by threats of violence did unlawfully, wilfully and feloniously attempt to take, steal and carry away personal property" from the place of business described.

[3] "It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment." *State v. Jackson,* 218 N.C. 373, 11 S.E. 2d 149; *State v. Keziah,* 258 N.C. 52, 127 S.E. 2d 784. He may, of course, be convicted of a lesser offense included therein. It is elementary that, upon a motion for judgment of nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State and the State is entitled to every favorable inference reasonably to be drawn from it. *State v. Miller,* 270

N.C. 726, 154 S.E. 2d 902. The evidence offered by the State must be taken to be true and any contradictions and discrepancies therein must be resolved in its favor. *State v. Lipscomb,* 274 N.C. 436, 163 S.E. 2d 788; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Clyburn,* 273 N.C. 284, 159 S.E. 2d 868; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679. For the purpose of such motion, the evidence of the defendant is considered only to the extent that it is favorable to the State or for the purpose of explaining or making clear the State's evidence, insofar as it is not in conflict therewith. *State v. Spears,* 268 N.C. 303, 150 S.E. 2d 499.

[4, 5] There must be substantial evidence of all material elements of the offense charged in order to withstand a motion for judgment of nonsuit. *State v. Hill,* 272 N.C. 439, 158 S.E. 2d 329; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. If, considered in accordance with the above mentioned rule, the evidence is sufficient only to raise a suspicion or conjecture as to whether the offense charged was committed, the motion for nonsuit should be allowed even though the suspicion so aroused by the evidence is strong. *State v. Clyburn, supra; State v. Cutler, supra; State v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472.

[6] With reference to the defendant Britton, the State's evidence shows only that he entered the building with Evans, stopped and, throughout the entire episode, stood at the counter upon which the cash register sat, but that he could not, in that position, open or reach into the cash register and that he left the building and the premises with Evans and Hairston. The State's evidence does not show that he addressed any remark to any occupant of the building, had any weapon, made any threat or demand or committed any other act. The testimony of all three of the defendants is that Britton had been picked up by Evans and Hairston some five minutes earlier for the sole purpose of giving him a ride to his destination, that there was no conversation of consequence between him and either of the other defendants, or between Evans and Hairston in his presence, concerning any robbery of this business establishment. Britton testified that he did not hear any statement by Evans inside the building concerning a holdup. None of this testimony is in conflict with any of the evidence offered by the State. If it be assumed that Evans, Hairston, or both of them, committed the offense charged, the mere presence of Britton at the scene of the crime and at the time of its commission does not make

him a principal in the second degree. *State v. Bruton, supra; State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5. Consequently, Britton's motion for judgment of nonsuit should have been granted.

[7] As to the defendants Evans and Hairston, the evidence for the State is simply that Evans walked into the building, went into the kitchen area and there said to Gary Douglas, "This is a holdup; no one's going to get hurt." At about that moment, Hairston walked into the building with a loaded, but breeched, shotgun cradled on one arm. Nothing else appearing, this would be evidence of an intent to perpetrate a robbery, but the State's evidence does not stop there. The State's evidence is that, upon the mere remonstrance of a single unarmed customer, Hairston stated that his purpose in coming into the building was to settle an argument with someone in the back of the building and removed the shell from the gun. Hairston's testimony, not in conflict with the State's evidence, identifies the other party to his argument as Evans. The State's evidence is that immediately upon the customer's objection to his having the loaded gun in the building, Hairston removed the shell from the gun, put it in his pocket and left the building, stopping in front of it long enough for some discussion with Evans. Hairston never pointed the gun at anyone or threatened to use it for any purpose.

As to Evans, though he denies making any statement about a holdup, the State's evidence in this respect must be taken to be true. However, the State's evidence shows that Gary Douglas, to whom the statement was made, treated it as a joke, ignored Evans and continued his work of washing the kitchen wall. Miss Douglas, hearing Evans' remark, "kept on fixing the chicken." Mrs. Eckert, having heard the remark, did nothing but receive from Evans the two dollars, promptly paid to her by him when the package of chicken was handed to him by Miss Douglas. Thereupon, Evans counted out and handed to Miss Douglas the additional 58 cents required to make up the agreed price of the container of chicken. The three men then left the building, having made no demand upon anyone for anything and having made no effort to open or to force anyone else to open the cash register. Leaving the building, the three defendants drove their car out of the parking lot into the street where it stalled. They allowed it to roll back downgrade to a shady place "just around the corner" where they parked and sat,

eating their purchased chicken, until the police officers arrived, whereupon they requested the officers to assist them to start their car.

The State's evidence completely negates the allegation in the indictment of an assault upon Mrs. Eckert, the allegation that the defendants endangered or threatened her life by the use and threatened use of the shotgun, and the allegation that they attempted to take personal property from this business establishment. The conduct of the defendants, shown by the State's evidence, is utterly inconsistent with an attempt to rob, and the motions by Evans and Hairston for judgment of non-suit, like that of Britton, should have been allowed.

It is unnecessary to discuss the remaining assignments of error.

Reversed.