STATE OF NORTH CAROLINA v. RONNIE GRAY GIBBONS

No. 107

(Filed 8 July 1981)

**1. Criminal Law § 43.4— admissibility of photographs**

In a prosecution of defendant for burglary, armed robbery, conspiracy, and assault with a deadly weapon with intent to kill inflicting serious injuries, the trial court did not err in admitting into evidence fifteen photographs introduced by the State, since the trial judge properly instructed the jury that they were to consider the photographs only as illustrative, not substantive, evidence; none of the twelve photographs illustrating the exterior and interior of the house was sufficiently horrible, gruesome, or gory to raise a question of their admissibility; and while the three photographs of the victim did depict the horrible injuries which resulted from a vicious, calculated act of cruelty, they were nevertheless properly admitted to illustrate the doctor's testimony concerning the extent of the victim's injuries.

**2. Robbery § 5.2— armed robbery—fists as dangerous weapon**

There was no merit to the State's contention that defendant's fists were a deadly weapon which would support a conviction of armed robbery, since the trial judge related the facts and law concerning the use of fists as a deadly weapon only to the crime of assault with a deadly weapon, and this application of the law to the facts could not be related back to the charge of robbery with firearms so as to assist the jury in reaching a correct verdict on the charge of robbery with firearms.

**3. Robbery § 4— armed robbery—possession of firearm—sufficiency of evidence**

Mere possession of a firearm during the course of a robbery is insufficient to support an armed robbery conviction under G.S. 14-87; rather, the statute includes an additional requirement that the possession of the firearm threaten or endanger the life of a person.

Justice CARLTON dissenting.

Justices HUSKINS and MEYER join in the dissenting opinion.

APPEAL by defendant from *Wood, J.,* 15 September 1980 Criminal Session of STOKES Superior Court.

Defendant was charged in bills of indictment proper in form with burglary, armed robbery, conspiracy, and assault with a deadly weapon with intent to kill inflicting serious injury.

The State's evidence tended to show that the victim, Mrs. Marietta Boaz Wilson, lived alone in rural Stokes County. She heard someone turning the knob of her door at 4:00 a.m. on 3 December 1979. After attempting to use the telephone and getting no dial tone, she went toward the door, but she was knocked

down and rendered unconscious as she approached the door. When Mrs. Wilson regained consciousness, someone was beating her about the head, and she observed a teenage boy standing at her feet. The person beating her said, "We come after your money." She lost consciousness again, and, when she came to, she managed to go outside and flag down a school bus for assistance. A doctor testified that the victim's face had been severely injured by the repeated blows. He said that the left eye socket had been pulverized so that not enough bone was left for reconstruction and that she was almost blinded in that eye. She had to stay in the hospital for three months.

James Edward Marsh testified that he, Roberto Roman Webber, and Ronnie Gray Gibbons had committed the break-in. He identified defendant as the person who beat Mrs. Wilson. The witness further testified that they took Mrs. Wilson's pocketbook which contained seven dollars and some change.

Defendant took the stand in his own defense and denied that he had gone to Mrs. Wilson's home on the morning of 3 December 1979.

On rebuttal Roberto Roman Webber testified that he was the third member of the group who broke into the house. He gave the following account of the break-in: Marsh was the first of the three who went into the house. Webber and defendant followed after Webber broke out the glass in a door with the butt of a shotgun he was carrying. Webber rested the shotgun against a wall. Mrs. Wilson was already on the floor when Webber and defendant entered the house, and Webber testified, "I don't reckon she could see the gun." After the three left the house defendant told the other two he thought he had killed the woman.

The jury found defendant guilty of first-degree burglary, robbery with a firearm, felonious conspiracy, and assault with a deadly weapon inflicting serious injury. On 18 September 1980, Judge Wood sentenced defendant to concurrent life sentences for the burglary and robbery with a firearm convictions and to consecutive ten-year sentences for the assault and conspiracy convictions to run at the expiration of the life sentences. Defendant appealed to this Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the State.*

*James L. Dellinger for defendant.*

BRANCH, Chief Justice.

[1]   By his first assignment of error, defendant contends that the trial court erred by admitting into evidence an excessive number of gory pictures, the sole purpose of which was to inflame the jury. The State, on the other hand, contends that the photographs were properly admitted under the rule in *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971).

In *Atkinson* this Court stated:

> The fact that a photograph depicts a horrible, gruesome, or revolting scene, indicating a vicious, calculated act of cruelty, malice, or lust does not render the photograph incompetent in evidence, when properly authenticated as a correct portrayal of conditions observed by and related by the witness who uses the photograph to illustrate his testimony.

*Id.* at 311, 167 S.E. 2d at 255.

In this case the State introduced fifteen photographs into evidence. Six of the photographs depict the exterior of the house and the broken door. Six others illustrate the scene inside the house, including some blood stains. Three of the photographs show the condition of the victim on being admitted to the hospital.

We have carefully examined these photographs and conclude that the trial court did not err in admitting them. First, we note that the trial judge properly instructed the jury that they were to consider the photographs only as illustrative, not substantive, evidence. Second, we hold that none of the twelve photographs illustrating the exterior and interior of the house is sufficiently horrible, gruesome, or gory to raise a question of their admissibility. Third, while the three photographs of the victim do depict the horrible injuries which resulted from "a vicious, calculated act of cruelty," we hold that they were properly admitted to illustrate the doctor's testimony concerning the extent of

the victim's injuries. *Id.* at 311, 167 S.E. 2d at 255. Further, we do not find the number of photographs introduced to be excessive.

Defendant next assigns as error the submission of the armed robbery charge to the jury. Defendant contends that the State offered no evidence that the shotgun was ever used to threaten or endanger the life of the victim. The State counters defendant's contention with two arguments. First, the State argues that defendant's fists were a deadly weapon which would support a conviction of armed robbery. Second, the State contends that it introduced sufficient evidence of the presence of the shotgun to place the issue before the jury.

The armed robbery statute under which defendant was convicted reads in pertinent part:

> § 14-87. *Robbery with firearms or other dangerous weapons.* (a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any . . . residence . . . at any time . . . or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony . . . .

[2] We first consider the State's argument that defendant's fists constituted a "dangerous weapon, implement or means" under this statute. Although a novel theory in North Carolina, the State contends that we should follow other states which recognize that fists, in certain circumstances, can be considered weapons to support an armed robbery charge. Defendant agrees that some states do so hold, but he contends that the judge's instructions to the jury on armed robbery did not include an instruction on fists as a deadly weapon. Therefore, he concludes that the jury could not have found defendant guilty under this theory.

In his charge to the jury on the armed robbery charge, the judge instructed:

> So I charge if you find from the evidence and beyond a reasonable doubt that on or about December 3, 1979, Ronnie Gibbons, either by himself or acting together with James Edward Marsh or Roberto "Chico" Webber, had in his posses-

sion a firearm and took and carried away a pocketbook with seven dollars in it from the person or presence of Marietta Boaz Wilson without her voluntary consent by endangering or threatening her . . . life with the use or the threatened use *of a shotgun*, Ronnie Gibbons knowing that he was not entitled to take the pocketbook with seven dollars in it and intending at that time to deprive Marietta Boaz Wilson of its use permanently, it would be your duty to return a verdict of guilty of robbery with a firearm.

However, if you do not so find or if you have a doubt as to one or more of *these* things, you will not return a verdict of guilty of robbery with a firearm. [Emphasis added.]

As we said in *State v. Williams*, 280 N.C. 132, 184 S.E. 2d 875 (1971), "The chief purpose of a charge is to give a clear instruction which applies the law to the evidence in such a manner as to assist the jury in understanding the case and in reaching a correct verdict." *Id.* at 136, 184 S.E. 2d at 877.

The trial judge in his charge related the facts and law concerning the use of fists as a deadly weapon only to the crime of assault with a deadly weapon. We do not believe that this application of the law to the facts could be related back to the charge of robbery with firearms so as to assist the jury in reaching a correct verdict on the charge of robbery with firearms. Thus, a fair reading of this charge indicates that the trial court restricted the State's proof of robbery with firearms to defendant's use of the shotgun.

[3] The State's second argument presents an issue of first impression in this State — whether mere possession of a firearm during the course of a robbery is sufficient to support an armed robbery conviction under G.S. 14-87.

The interpretation of an armed robbery statute depends on its wording. Some states have statutes which simply provide that a robbery perpetrated by a person "armed with a deadly weapon" is robbery in the first degree. 67 Am. Jur., Robbery, § 4 (1973). In these states, courts have held that the statute does not require actual use of a weapon, and that mere possession is sufficient to fulfill the requirement that the perpetrator was armed. *E.g. People v. Hall*, 105 Cal. App. 359, 287 P. 533 (1930). Other states have

statutes which make the "display" of a weapon an aggravating factor of robbery. Model Penal Code, Robbery § 222.1, Comment 5, Note 64 (1980). These states require more than mere possession of a dangerous weapon to make out this element of the crime. *E.g. State v. Smallwood,* 346 A. 2d 164 (Del., 1975).

The wording of North Carolina's statute, however, does not fall neatly into either of these categories. The pertinent language of our statute reads, "Any person or persons who, having in possession . . . any firearms . . . whereby the life of a person is endangered or threatened . . . ." G.S. 14-87. While it does include words prohibiting possession, it includes an additional requirement that the possession threaten or endanger the life of a person. Only if we construe the statute to mean that mere possession of a firearm is threatening or endangering can defendant's action come within the proscription of the statute.

We can find no case in which this Court has held or even implied that mere possession of a dangerous weapon is sufficient to support a charge of armed robbery. On the contrary, in the recent case of *State v. Joyner,* 295 N.C. 55, 243 S.E. 2d 367 (1978), we recognized that possession and endangering or threatening are separate elements of the crime:

> The essentials of the offense set forth in G.S. 14-87 are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of "firearms or other dangerous weapon, implement or means"; and (3) danger or threat to the life of the victim.

*Id.* at 63, 243 S.E. 2d at 373. The element of danger or threat to the life of the victim is the essence of the offense. As the Court said in *State v. Covington,* 273 N.C. 690, 161 S.E. 2d 140 (1968),

> Prerequisite to conviction for armed robbery . . . the jury must find from the evidence beyond a reasonable doubt that the *life* of the victim was *endangered* or *threatened* by the *use* or *threatened use* [or possession] of "firearms or other dangerous weapon, implement or means."

*Id.* at 699-700, 161 S.E. 2d at 147. [Original emphasis.]

In a case presenting the only fact situation close to the one presented by this case, this Court held that possession of a load-

ed, but breeched shotgun did not endanger or threaten the life of the alleged victim of a robbery. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971). In *Evans* the defendant entered a store with the loaded, breeched shotgun after a companion said, "This is a holdup; no one's going to get hurt." Upon the remonstrance of one of the customers in the store, the defendant removed the shell from the shotgun and said his purpose was only to settle an argument. The Court noted that the defendant "never pointed the gun at anyone or threatened to use it for any purpose." *Id.* at 454, 183 S.E. 2d at 545. The Court concluded, "The State's evidence completely negates . . . the allegation that the defendants endangered and threatened [the victim's life by the use or threatened use of the shotgun . . . ." *Id.* at 455, 183 S.E. 2d at 545-46.

In this case, while the State presented evidence of the element of possession of a deadly weapon, it presented no evidence that defendant endangered or threatened the life of the victim by possession of that weapon, aside from the mere fact of the weapon's presence. The victim did not testify that a weapon was used in the crime. The perpetrators testified that the shotgun was present at the scene, but they did not testify that the gun was pointed at the victim or used to threaten her. On this evidence we hold that the State has not offered any evidence that the life of the victim was endangered or threatened by possession of the shotgun.

We recognize that the contemporary problem of the proliferation of cheap handguns might call for a law which makes criminal the mere possession of a gun during the perpetration of a felony, but we do not think that the legislature intended this law to meet this policy for three reasons. First, the language of the pertinent section of this statute has not been changed since its promulgation in 1929, so it cannot be considered a legislative response to a contemporary problem. Second, this Court has often stated that G.S. 14-87 does not create a new crime, it merely increases the punishment which may be imposed for common law robbery where the perpetrator employs a weapon. *E.g. State v. Black*, 286 N.C. 191, 209 S.E. 2d 458 (1974). The focus of the statute then is not the creation of a new crime for commission of an offense with a firearm, but the punishment of a specific person who has committed a robbery which endangers a specific victim. In this sense, a statute seeks retribution by punishing a specific offender,

rather than deterrence by creating a new crime of possession of a firearm during a robbery. Third, our interpretation of the statute comports with the well-recognized canon of statutory construction which requires that a statute be construed so that all of its terms have meaning. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972). If the statute were construed to proscribe mere possession of a weapon, then the phrase, "whereby the life of a person is endangered or threatened," would be mere surplusage. Our interpretation, which requires both an act of possession and an act with the weapon which endangers or threatens the life of the victim gives substance to all the terms of the statute.

We do not disagree that it might be wise policy for the legislature to enact a law making mere possession of a firearm during a robbery a crime, but we do not believe this commendable result should be reached by judicial legislation.

The defendant's contention that the offense of assault with a deadly weapon inflicting serious injury is a lesser included offense of armed robbery has no merit. *See State v. Richardson*, 279 N.C. 621, 185 S.E. 2d 102 (1971).

In cases #80CR2778, 80CR3054, and 80CR3055 no error.

In case #80CR3051, reversed and remanded for sentencing for common law robbery.

Justice CARLTON dissenting.

I must respectfully dissent in case #80CR3051. In my opinion, the majority, contrary to the plain language of the statute, has judicially imposed upon the State an impossible burden of proof with regard to the element of endangering another's life in armed robbery cases.

The Legislature itself has defined the crime of armed robbery and listed the elements which make up that offense. Under our statutes, armed robbery is defined thusly:

> Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to

take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than seven years nor more than life imprisonment in the State's prison.

G.S. § 14-87(a) (Cum. Supp. 1979). The elements are (1) possession, use or threatened use of a firearm or other dangerous instrumentality, (2) the endangering or threatening of another's life, and (3) the unlawful taking or attempt to take the personal property of another. From the listing of these elements it is clear that, absent an actual threat to use the firearm, the endangerment requirement can be proved only by circumstantial evidence. It is further obvious, I think, that the only circumstances relevant to this element are the possession or use and the taking of or attempt to take personal property, the remaining elements of armed robbery. In my opinion, whenever the State has shown these two elements there arises a *permissible inference* of endangerment and the case should be submitted to the jury. Were it otherwise, possession of a firearm during a robbery or attempted robbery could never constitute the crime of armed robbery as the Legislature says it can. The majority opinion would require proof of something more than mere possession. I submit that when a firearm is possessed during a robbery and there is no threat of use, there is never "something more" that the State can show to prove, either directly or circumstantially, the element of endangerment. In short, the majority opinion has construed the word "possession" in the armed robbery statute to be meaningless. Under its interpretation of the statute, possession of a firearm during a robbery can never be armed robbery, contrary to the plain language of the statute. I do not believe that our prior case law dictates the majority's result. If, indeed, it does support the majority's conclusion, it ought to be overruled.

I vote to hold that once the State has produced substantial evidence of possession of a firearm during a robbery or attempted robbery, a permissible inference of endangerment arises and the case must be submitted to the jury. In my opinion, the evidence of armed robbery presented at trial was sufficient to warrant sub-

mission of the case to the jury and to support defendant's conviction.

Justices HUSKINS and MEYER join in this dissenting opinion.