STATE OF NORTH CAROLINA v. CHARLES MELVIN

No. 8015SC1134

(Filed 18 August 1981)

1. **Searches and Seizures § 15— standing of passenger to object to search and seizure of items from automobile**

    An individual's Fourth Amendment rights are personal rights and standing is based upon the "legitimate expectations of privacy" of the individual asserting that right in the place which has allegedly been unreasonably invaded; therefore, defendant failed to establish standing to object to seizure of items from an automobile in which he was only a passenger and in which he asserted neither an ownership nor a possessory interest.

2. **Criminal Law § 84; Searches and Seizures § 47— police officers outside territorial jurisdiction — evidence from search of automobile admissible**

    Evidence obtained in the search and seizure of an automobile in which defendant was a passenger properly was admitted even though the arresting police officers were outside their territorial jurisdiction as prescribed by G.S. 15A-402 and defendant's arrest may have been unlawful.

3. **Arrest and Bail § 4— territory in which officer may arrest — arrest after "immediate and continuous" flight from territory**

    There was authority to arrest defendant under the "immediate and continuous" flight exception of G.S. 15A-402(b) where defendant was suspected of recently completing an armed robbery, was arrested 1.67 miles outside an officer's territory, and where the arresting officer had followed the automobile in which defendant was traveling inside his territory but waited until he received assistance before stopping the automobile.

State v. Melvin

**4. Criminal Law § 66.9— photographic identification—no suggestiveness**

There was no suggestiveness in a photographic identification procedure whereby a witness chose defendant's photograph from a series of seven photographs and none of the photographs contained names or other distinguishing markings.

**5. Criminal Law § 66.16— independent origin of in-court identification**

Where a witness looked directly at defendant's face and had an opportunity to observe defendant from a distance of one and one-half to two feet under good lighting conditions for a period of from two to three minutes, this is evidence from which the trial court could find the witness's in-court identification was not tainted by any pretrial identification procedures.

**6. Robbery § 1.1— armed robbery—sufficiency of the evidence**

In a prosecution for armed robbery, evidence was sufficient to be submitted to the jury on the element of endangering or threatening the life of a person where the evidence showed the witness was robbed while defendant held a pistol in his hand.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 2 July 1980 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 1 April 1981.

Defendant was charged in two separate bills of indictment with the crime of armed robbery. Both of the alleged offenses occurred on 21 January 1980, one within a short time of the other. Defendant was accused of the armed robbery of $300.11 from Russell Worley the attendant at the Best Western Burlington Inn in Burlington, and with the armed robbery of $44.82 from Eugenia O. Leonard the attendant of the Seven-Eleven Store on East Harden Street in Graham. Defendant pleaded not guilty to both of these charges. Following the trial of the consolidated cases, a jury found defendant guilty of both counts of armed robbery. The trial court consolidated the cases for judgment and sentenced defendant to a term of 40 years imprisonment. Defendant appealed from this judgment.

*Attorney General Edmisten, by Special Deputy Attorney General David S. Crump, for the State.*

*Thomas V. Aldridge, Jr., for the defendant appellant.*

MORRIS, Chief Judge.

Before trial defendant made a motion to suppress certain items of evidence. These items consisted of money, a coat, a cap,

and a pair of gloves, all of which had been seized by the police from the automobile in which defendant had been a passenger at the time of his arrest for the offenses charged. The basis for the motion to suppress was defendant's contention that the items were illegally seized by the police following the unreasonable search of the vehicle in which he was riding.

At the hearing on this motion and other pretrial motions, evidence was presented with respect to the circumstances surrounding the alleged unreasonable search and seizure. In summary, this evidence tended to show that on the evening of 21 January 1980 Police Officer A. L. Adams, a patrolman with the Burlington Police Department, was on duty in the vicinity of the robberies. Officer Adams was on the alert for a gray or silver Ford Thunderbird, having received a radio message that a car fitting that description was believed to be the getaway car used by the robber of the Best Western Motel. He spotted a Thunderbird similar to the description of the robber's vehicle and pursued it down I-85 toward Durham leaving the city limits of Burlington. Officer Adams was joined in this chase by another patrol car which was driven by Officer Shields also of the Burlington police. With his blue light and siren, Officer Adams signaled for the Thunderbird to stop. The Thunderbird did not come to an immediate stop, but continued travelling down the interstate for approximately three-fourths of a mile. Before it was stopped, near the intersection of I-85 and highway 54, the Thunderbird pulled over to the right side of the road and weaved in and out of some posts. When it finally stopped, the door on the passenger's side of the Thunderbird flew open, and an occupant of the vehicle tossed a quantity of money out of the car. The police approached the car and ordered the occupants to get out. The evidence indicated that defendant was not the driver of the automobile, but he was the passenger.

The police searched the car and surrounding area. They collected and seized a quantity of paper money and coins which were scattered along the shoulder of the road adjacent to the Thunderbird. They discovered a brown zipper bag inside the car containing more money, and they observed more money scattered about the car in the area of the front seat and floorboard. A green parka, maroon cap, and pair of brown gloves were observed in the rear of the car.

After considering all of the evidence, the trial court entered its order denying defendant's motion to suppress the evidence seized from the Thunderbird, and the evidence was used at trial to identify defendant as the perpetrator of the armed robberies.

Defendant's initial assignment of error is addressed to the trial court's denial of his motion to suppress this evidence. He argues that the police procured this evidence by means of an unreasonable search and seizure in violation of his Fourth Amendment rights, and submits that his constitutional rights were violated because the search of the car was conducted without a search warrant and in the absence of probable cause and exigent circumstances. Additionally, he argues that the search and seizure was illegal because the arresting officers were not within their territorial jurisdiction as set forth in G.S. 15A-402. Therefore, defendant maintains they lacked the authority to stop the vehicle and make the search and seizure.

[1] We need not address defendant's argument as to whether his Fourth Amendment rights were violated by this search and seizure for he does not possess the standing required to assert it. In its order denying defendant's motion to suppress, the trial court concluded as a matter of law that, "defendant, Charles Melvin, has shown no standing to object to a search of said vehicle." We are in agreement with this result.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed. 2d 387 (1978), *rehearing denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed. 2d 83 (1979), the Supreme Court of the United States held that a defendant who was aggrieved by a search and seizure through the introduction of damaging evidence secured by a search of an automobile in which the defendant was only a passenger and not the owner or driver of the car nor the owner of the items seized therefrom did not suffer violation of his Fourth Amendment rights. This determination was based on the premise that the defendant did not have the right to assert contentions based on the violation of constitutional rights which were not his own, but were the rights of the owner or possessor of the automobile. Put in other words, an individual's Fourth Amendment rights are personal rights which may not be vicariously asserted by another. In so holding the Court explained:

"[R]ights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S., at 389, 19 L.Ed. 2d 1247, 88 S.Ct. 967.

*Rakas v. Illinois*, supra, at 138, 99 S.Ct. at 428, 58 L.Ed. 2d at 398, *quoting, Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968).

Standing to claim the protection of the Fourth Amendment guaranty of freedom from unreasonable governmental searches and seizures is based upon the "legitimate expectations of privacy" of the individual asserting that right in the place which has allegedly been unreasonably invaded. *Rakas v. Illinois*, supra, *citing, Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967). There exists a close relationship between the concept of "standing" and that of "legitimate expectations of privacy." Indeed they seemed to have been merged into each other. In *Rakas*, the Supreme Court shifted its analysis away from the label "standing" to focus more upon whether an individual has a "legitimate expectation of privacy" in the location where incriminating evidence is discovered and seized. *Accord, State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. LeDuc*, 48 N.C. App. 227, 269 S.E. 2d 220 (1980). Thus, it is this analysis we must apply when examining charges of unreasonable search and seizure to determine in each case whether the individual asserting these constitutional rights actually possesses them.

A defendant has the burden of demonstrating the infringement of his Fourth Amendment rights in these cases. *State v. Greenwood*, 301 N.C. 705, 273 S.E. 2d 438 (1981); *State v. Jones*, supra; *State v. Taylor*, 298 N.C. 405, 259 S.E. 2d 502 (1979). In order for the defendant to establish that he has standing, he must demonstrate that he had a "legitimate expectation of privacy" in the premises searched. *Rakas v. Illinois*, supra; *accord, State v. Jones*, supra; *State v. Alford*, 298 N.C. 465, 259 S.E. 2d 242 (1979). In the case *sub judice* defendant, who is claiming an infringement of his Fourth Amendment rights, has asserted neither an ownership nor a possessory interest in the automobile which was searched. The evidence presented at the pretrial hearing

established that defendant did not own the car in which he was riding and he was not driving the car, but he was merely a passenger therein when he was arrested. Nor did the items of evidence seized by the police from the car belong to defendant. Defendant testified on cross-examination:

> I wasn't the operator of the car; I was the passenger. The green parka, the maroon cap, and the brown gloves are not mine. . . . Arland Braswell owned the green parka, maroon cap and brown gloves. I do not claim ownership to a brown zipper bag. . . . The owner of the car is Arland Braswell.

*Rakas v. Illinois,* supra, involved a factual situation practically identical to that in the case *sub judice.* In *Rakas* evidence consisting of a rifle and shells was admitted in the trial of two defendants despite the codefendants' motion to suppress its admission. The rifle and shells were discovered during the police search of an automobile in which the codefendants had been passengers. The rifle was found under the car seat and the shells in the glove compartment. In examining the facts of *Rakas* to determine whether the defendants had shown an expectation of privacy in the areas where the evidence was located, Justice Rehnquist reasoned:

> They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. It is unnecessary for us to decide here whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in analogous circumstances. We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes. See *United States v. Chadwick,* 433 US, at 12, 53 LEd 2d 538, 97 SCt 2476; *United States v. Martinez-Fuerte,* 428 US 543, 561, 49 LEd 2d 1116, 96 SCt 3074 (1976); *Cardwell v. Lewis,* 417 US 583, 590, 41 LEd 2d 325, 94 SCt 2464, 69 Ohio Ops 2d 69 (1974) (Plurality opinion). But here petitioners' claim is one which would fail even in an

analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of automobile, these are areas in which a passenger quo passenger simply would not normally have a legitimate expectation of privacy. Supra, at 142, 58 LEd 2d, at 400.

*Rakas v. Illinois*, 439 U.S. at 148-49, 99 S.Ct. at 433, 58 L.Ed. 2d at 404. The Justice's statement is equally applicable to the case before us. By simply showing that he was a passenger in the car from which the police seized the incriminating evidence, defendant did not demonstrate that he possessed any "legitimate expectation of privacy" in the area searched. The disputed search and seizure did not infringe upon any interest of defendant which the Fourth Amendment was designed to protect. Since defendant has failed to show that his own Fourth Amendment rights were violated by this search and seizure, he cannot gain standing by asserting the constitutional rights of others. Accordingly, this assignment of error is overruled.

[2] As a further ground for his argument that the trial court erred by denying his motion to suppress, defendant alleges that the arresting police officers were not within their territorial jurisdiction as established in G.S. 15A-402 and, therefore, were without authority to stop and search the vehicle in which the incriminating items were found.

As stated by Judge Hedrick in *State v. Mangum*, 30 N.C. App. 311, 226 S.E. 2d 852 (1976):

The technical violation of this statute [G.S. 15A-402] . . . does not necessarily require exclusion of evidence obtained in the search incident to the arrest. The Fourth Amendment only protects the defendant against *unreasonable* searches. (Citations omitted.) "An unlawful arrest may not be equated, as defendant seeks to do, to an unlawful search and seizure." *State v. Eubanks*, 283 N.C. 556, 560, 196 S.E. 2d 706, 709 (1973).

30 N.C. App. at 314, 226 S.E. 2d at 854. In *Mangum* the Court held that the arresting officer did not have the authority to make

the arrest under G.S. 15A-402. However, the Court held that the items of evidence seized pursuant to that arrest were admissible.

[3] In this instance defendant is asserting that the items of evidence seized from the car in which he was a passenger should have been excluded at trial because his arrest was illegal. For the same reasons stated in *Mangum* we think defendant's assertion is invalid. The evidence obtained in this search and seizure need not be excluded even if the arrest out of which the search and seizure arose was unauthorized under G.S. 15A-402. Moreover, we do not think that defendant's arrest was illegal. The arresting officers were authorized by the statute to pursue and arrest.

G.S. 15A-402 provides:

(c) City Officers, Outside Territory.—Law-enforcement officers of cities may arrest persons at any point which is one mile or less from the nearest point in the boundary of such city.

(d) County and City Officers, Immediate and Continuous Flight.—Law-enforcement officers of cities and counties may arrest persons outside the territory described in subsections (b) and (c) when the person arrested has committed a criminal offense within that territory, for which the officer could have arrested the person within that territory, and the arrest is made during such person's immediate and continuous flight from that territory.

Glenn Wilson who was employed by the Alamance County Tax Department testified that he estimated that the distance from the closest point in the boundary of the Burlington city limits to the point where Officer Adams halted the car in which defendant was riding at the intersection of I-85 and highway 54 was 1.67 miles. This was outside the one-mile limit prescribed by G.S. 15A-402(c). However, the facts surrounding this arrest bring it within the exception for "immediate and continuous flight" of G.S. 15A-402(d). The evidence reveals that Officer Adams was informed of the armed robbery of the Burlington Best Western, and he was aware that the perpetrator of this crime was driving or riding in a silver Thunderbird. Officer Adams spotted the car which fit that description in which defendant was riding and he followed it down I-85. Officer Adams testified that he did not im-

mediately stop the Thunderbird as it moved further away from the corporate limits of Burlington so that another police officer could enter I-85 to give him assistance in stopping the Thunderbird. This was prudent police procedure in light of the fact that the occupant of the Thunderbird was suspected of just having committed an armed robbery. As soon as Officer Shields of the Graham Police joined Officer Adams at the intersection of I-85 and highway 87, Officer Adams attempted to stop the Thunderbird by using his siren and blue light. The Thunderbird continued to travel approximately three-fourths of a mile before stopping. We think that these facts demonstrate that the police suspected that the occupants of this silver Thunderbird had just completed an armed robbery within the City of Burlington and they stopped the Thunderbird to arrest its occupants while they were in "immediate and continuous" flight from Burlington. Furthermore, we think that the facts amply show that the police had probable cause to arrest defendant. A description of an automobile may furnish reasonable grounds for detaining and arresting a criminal suspect. *See State v. Jacobs,* 277 N.C. 151, 176 S.E. 2d 744 (1970); *State v. White,* 25 N.C. App. 398, 213 S.E. 2d 394, *cert. denied,* 287 N.C. 468, 215 S.E. 2d 628 (not reported in S.E. 2d) (1975). Therefore, under G.S. 15A-402(d) the arresting officers did have authority to arrest defendant even though the car in which he was riding was stopped over one mile from the Burlington city limits.

Defendant's second assignment of error is to the trial court's denial of his pretrial motion to suppress evidence of both the out-of-court and in-court identification of defendant as the perpetrator of these armed robberies by state's witness Eugenia Leonard.

[4] The evidence introduced at the pretrial hearing with regard to Mrs. Leonard's involvement in one of the armed robberies with which defendant was charged and of her subsequent identification of defendant tended to show the following: On 21 January 1980 Mrs. Leonard was on duty at the Seven-Eleven Store in Graham where she was employed. The lighting conditions in the store were good. At approximately 10:30 or 10:45 p.m. defendant entered the store and stood directly across the counter from her. He was about one and one-half to two feet from her. Defendant had a handgun and he demanded that Mrs. Leonard give him all of the money she had. This she did. Defendant took the money

and left the store. He was inside the store for a total of from two to three minutes.

Following the robbery and at the behest of the police, Mrs. Leonard participated in a pretrial photographic identification procedure which was designed to identify the person who had robbed her. Soon after the robbery Officer Perdue of the Graham Police Department exhibited to Mrs. Leonard a series of seven photographs, one of which was of defendant. All of these photographs were in color and none of them had visible distinguishing names or markings on them. Mrs. Leonard selected defendant's photograph from this series and identified him as the man who had robbed her. Mrs. Leonard subsequently testified at defendant's trial describing how she had chosen defendant's picture out of the series in the photographic identification test.

The trial court, by order entered on 18 June 1980, denied defendant's motion to suppress evidence of Mrs. Leonard's out-of-court photographic identification and in-court identification of defendant. Defendant submits that the court's order was erroneous, because the pretrial photographic identification procedure used by the Graham Police was impermissibly suggestive and, thus, gave rise to a substantial likelihood of irreparable misidentification of the defendant as perpetrator of the robbery in the subsequent in-court identification. Defendant alleges that the photographic identification procedure was impermissibly suggestive because the series of photographs used in the out-of-court procedure was prejudicial to such an extent as to leave Mrs. Leonard little choice but to pick the photograph of defendant.

The introduction at trial of testimony concerning an out-of-court photographic identification should be excluded when the procedure used was impermissibly suggestive. *State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977); *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972). We must review the totality of the circumstances as found by the trial court surrounding the photographic identification procedure to determine whether that procedure used by the Graham Police was impermissibly suggestive. The trial court made these findings of fact in this regard:

> [T]hat on the morning of January 21, 1980, an officer of the Graham Police Department exhibited to Mrs. Leonard a series of some seven photographs, one of which was a

photograph of the defendant; that these photographs had been selected by Officer Perdue from photographs available to him in his office; that a polaroid photograph of the defendant was made by the officer on the evening of January 21 or 22, 1980, and that photograph was combined with the others; that all of said photographs were in color and that none of them contained names or other markings thereon which would in any way distinguish the photograph of the defendant from the other photographs; that Officer Perdue did not make any suggestion to Mrs. Leonard when the photographs were given to her or tell her anything about the photographs; that Mrs. Leonard selected from these photographs the photograph of the defendant; that she looked at the defendant on several occasions while he was in her presence on the 21st of January.

They are supported by the evidence. Neither the evidence nor the findings based thereon contains anything to indicate that the collection of photographs or the manner in which they were exhibited to Mrs. Leonard was unduly suggestive or contributed to her selection of defendant's photograph. For cases where similar procedures were approved see: *State v. Dunlap,* 298 N.C. 725, 259 S.E. 2d 893 (1979); *State v. Davis,* 294 N.C. 397, 241 S.E. 2d 656 (1978); *State v. Long,* supra; *State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977). We find the procedure was not impermissibly suggestive.

It follows, therefore, that the witness's in-court identification of defendant was not tainted thereby. However, in this instance even if the pretrial photographic identification of defendant had been impermissibly suggestive, Mrs. Leonard's in-court identification of defendant would have been properly admitted into evidence.

[5] An in-court identification is competent when it is independent in origin from an improper out-of-court identification procedure. *State v. Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Gray,* supra. The trial court made the following findings of fact with regard to Mrs. Leonard's confrontation with defendant during the crime:

[L]ighting conditions in the store were good; that at about 10:30 to 10:45 p.m. the defendant entered the store where Mrs. Leonard was working and stood directly across the

counter from her, a distance of about one and a half or two feet; that he carried with him a bag which had a zipper; that she looked at his face; that the defendant had a gun and that he demanded of Mrs. Leonard that she give him all of the money; that he was on that occasion wearing a dark jacket which had a hood with fur around it; that she looked directly at his face; that the defendant was in the store for not more than two or three minutes; . . .

These findings show that Mrs. Leonard had ample opportunity to view defendant at the time of the crime and that she was alert and observant of defendant. The findings support the court's conclusion that, "based on clear and convincing evidence any in-court identification of the defendant made by Mrs. Leonard is of independent origin based solely upon what she saw at the time of the robbery on January 21, 1980, and is not tainted by any pretrial identification procedure." Its order is accordingly affirmed. We note that defendant did not object to the witness's identification testimony at trial.

[6] Defendant's fourth assignment of error is directed to the court's denial of his motions to dismiss the charges against him. Defendant submits, with regard to the charge of armed robbery of Mrs. Leonard, that the evidence did not reveal that at any time during the commission of the robbery defendant ever actually threatened the victim with harm nor did the evidence reveal that he endangered the victim by the use or threatened use of a firearm. Therefore, defendant contends the evidence presented was not sufficient to warrant its submission to the jury and to support a verdict of guilty of armed robbery. *See, State v. Barrow*, 292 N.C. 227, 232 S.E. 2d 693 (1977). The question for the court is whether, upon consideration of all the evidence in the light most favorable to the state, there was reasonable basis upon which the jury might find that the offense charged in the indictment had been committed and that the defendant was the perpetrator of the armed robbery. *See, State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

In defendant's case the evidence was sufficient to raise more than a suspicion or conjecture that defendant was the perpetrator of the armed robbery with which he was charged. The elements of the offense of robbery with a firearm are delineated in G.S. 14-87 as follows:

State v. Melvin

Any person or persons who, *having in possession* or with the use or threatened use of any firearm or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business. . . . (Emphasis added.)

*See also, State v. May*, 292 N.C. 644, 235 S.E. 2d 178, *rehearing denied*, 293 N.C. 261, 247 S.E. 2d 234, *cert. denied*, 434 U.S. 928, 98 S.Ct. 414, 54 L.Ed. 2d 288 (1977). As noted, defendant contends that there was no proof that he actually threatened or endangered the life of Mrs. Leonard with a firearm or dangerous weapon. The Supreme Court has interpreted this particular element of the crime as meaning whether the victim's life "was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his or her life." *State v. Joyner*, 295 N.C. 55, 63, 243 S.E. 2d 367, 373 (1978); *State v. Evans* and *State v. Britton* and *State v. Hairston*, 279 N.C. 447, 183 S.E. 2d 540 (1971); *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971).

The evidence presented by the state in the instant case was sufficient to show that during the course of the robbery, there was a threatened use of firearm which endangered or threatened Mrs. Leonard's life. Mrs. Leonard testified:

When he first came into the store he asked me for a dollar's worth of change . . . When I looked up and opened the cash register drawer to give him the dollar's worth of change, he told me that he wanted the money that I had in the store. I looked down and he had his hand over a gun on the counter . . . . All I know is that it was a small black gun.

The evidence shows that defendant robbed Mrs. Leonard while holding a pistol in his hand. We think this is ample proof of this element of the crime. There was sufficient evidence of each of the elements of armed robbery and that defendant was the perpetrator of the armed robbery to justify the trial court's denial of his motion to dismiss.

Defendant's remaining assignment of error with regard to whether the trial court's denial of defendant's motion to sever the two offenses with which defendant was charged for trial is

deemed abandoned, because it was not brought forward and argued in his brief. Rule 28(a), N.C. Rules of Appellate Procedure. We find that defendant received a fair trial free from error.

No error.

Judges MARTIN (Harry C.) and HILL concur.