STATE OF NORTH CAROLINA v. WILLIAM COLE BARTOW

No. 855SC45

(Filed 1 October 1985)

1. **Criminal Law § 66.9— photographic identification—defendant's photograph distinguishable—photographs altered—not unduly suggestive**

    The trial court did not err in a prosecution for armed robbery by not suppressing an out-of-court photographic identification of defendant by the victim where the photographs had been altered by drawing eyeglasses on each picture to conform to the victim's description of the robber and defendant was the only person pictured having cuts and bruises on his face and wearing dark clothes. The alteration of the photographs was not impermissibly suggestive since all of the photographs were similarly altered and the cuts, bruises, and dark clothing were not unduly suggestive because the victim had not described the robber as having those features.

---

State v. Bartow

---

**2. Criminal Law § 38— armed robbery—previous incidents—admissible**

The trial court did not err in a prosecution for armed robbery of a Domino's Pizza delivery person by allowing the owner of the Domino's to testify as to an earlier incident in which defendant, a former Domino's employee, had ordered a pizza under a different name and using the address of the house across the street from where he was staying; defendant met the owner in the street when the owner came to deliver the pizza; defendant was not immediately recognized by the owner because he was wearing eyeglasses and had a mustache drawn on his face, which the owner had not previously seen; and defendant left to get money for the pizza, returned and said he did not have the money, and did not answer when asked why he had ordered the pizza. The testimony was relevant to show identity and plan because of similarities between the incident and the robbery. G.S. 8C-1, Rule 404(b) of the North Carolina Rules of Evidence (1983 Cum. Supp.).

**3. Robbery § 4.3— armed robbery—endangering or threatening victim—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of robbery with a dangerous weapon where the robber held a gun in his hands parallel to the victim's car within six inches to one foot from the victim's face during the robbery, showed the victim that he had a gun, and told her that she would not get hurt if she stayed calm and did as he directed. G.S. 14-87.

**4. Criminal Law § 122.1— jury's request for reinstruction—defendant's request for additional instruction denied—no error**

The trial court did not err in a prosecution for robbery with a dangerous weapon where the jury requested reinstruction on the definitions of robbery with a firearm and common law robbery, the court reinstructed on the definitions of the offenses but refused to reinstruct that mere possession of a firearm did not by itself constitute endangering or threatening the life of the victim as requested by defendant, and the instruction requested by defendant had been included in the court's original charge to the jury. The court is not required to repeat instructions which were previously given to the jury in the absence of some error in the charge. G.S. 15A-1234 (1983).

APPEAL by defendant from *Strickland, Judge.* Judgment entered 10 July 1984 in NEW HANOVER County Superior Court. Heard in the Court of Appeals 13 August 1985.

Defendant was charged in a true bill of indictment with robbery with a dangerous weapon. He was accused of stealing and carrying away, with the use of a handgun, personal property of the value of $179.52 from Judy E. Hales, a delivery person for Domino's Pizza ("Domino's"), on 14 February 1984. A jury found defendant guilty as charged. From a judgment of imprisonment entered upon the conviction, defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney Michael Smith and Associate Attorney Abraham P. Jones, for the State.*

*Zimmer and Zimmer, by Jeffrey L. Zimmer and Melinda Haynie, for defendant.*

WELLS, Judge.

[1] Defendant first argues that the trial court erred by not suppressing evidence of Ms. Hales' out-of-court photographic identification of him as the perpetrator of the robbery. He contends the identification procedure was impermissibly suggestive because (1) the photographs shown to Ms. Hales were altered by the drawing of eyeglasses on each person pictured so as to conform to Ms. Hales' description of the robber, and (2) because his photograph was distinguishable from the others in that he was the only person pictured having cuts and bruises on his face and wearing dark clothing. Defendant further argues that the court erred in allowing Ms. Hales' in-court identification of him when such identification was based on the impermissibly suggestive out-of-court identification rather than being of independent origin.

Prior to trial defendant moved to suppress both the photographic identification and any in-court identification of him by Ms. Hales. A *voir dire* was held at trial on defendant's motion at the conclusion of which the court made findings of fact which are summarized as follows: The robbery occurred at the intersection of two streets in Wilmington approximately 15 feet away from an outside light on a lamppost. Ms. Hales shined her flashlight in the perpetrator's face and the bright lights of her automobile were on while the perpetrator was standing in front of the automobile. The perpetrator and Ms. Hales were in each other's presence for about five minutes during which time the perpetrator got between six inches and one foot from Ms. Hales' face. Ms. Hales observed the perpetrator's clothing, his height and his race. She described him as being six feet tall and white, and wearing a foreign legion type hat, a green jacket, jeans and tennis shoes. She also described the perpetrator as wearing heavy-rimmed eyeglasses. She did not indicate to the investigating officers that the perpetrator had any red marks, cuts, or bruises on his face. Ms. Hales did not know defendant before the offense occurred and has

not previously made an erroneous identification of any other person.

The court further found as follows: Thirteen days after the robbery, Officer Landry of the New Hanover County Sheriff's Department acquired photographs of seven young white males, none of whom wore eyeglasses, and with a grease pencil drew in eyeglasses on the front view of each individual. The eyebrows of several of the persons in the photographs were covered by the eyeglasses drawn in by Officer Landry. All of the individuals in the photographs were wearing light clothing except for defendant; however, Ms. Hales never advised Officer Landry as to whether the perpetrator was wearing light or dark clothing. All of the photographs were similar in type in that they were mug shots showing both the front and side views of each person. On 28 February 1984, Ms. Hales was shown the photographs and was told only to look cautiously through them. She was not told whether a photograph of the suspect was in the group of photographs. Ms. Hales went through the photographs one time, hesitating once, then looked back through the photographs and picked out the photograph of defendant which she positively identified as a photograph of the perpetrator of the robbery. While Ms. Hales was observing the photographs, Officer Landry was not close to her, nor did he make any suggestions or comments to her whatsoever either before or while she was going through the photographs. Ms. Hales' photographic identification of defendant on 28 February 1984 was the only identification made by her outside of court.

Based on these findings, the court concluded that the pretrial photographic identification procedure involving defendant was not suggestive or conducive to irreparable mistaken identification so as to violate defendant's due process rights. The court further concluded that Ms. Hales' in-court identification of defendant was of independent origin based solely on what she saw at the time of the robbery and was not tainted by any unnecessarily suggestive pre-trial identification procedure, and denied the motion to suppress.

The findings made by a court in determining whether identification testimony is admissible are conclusive on appeal if supported by competent evidence. *State v. Woods*, 286 N.C. 612, 213

State v. Bartow

S.E. 2d 214 (1975), *modified*, 428 U.S. 903, 49 L.Ed. 2d 1208, 96 S.Ct. 3207 (1976); *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974). We conclude from our examination of the record that plenary evidence was presented which supports the findings made here. The findings made support the conclusions reached and the decision rendered by the trial court. The alteration of the photographs was not impermissibly suggestive since all of the photographs were similarly altered. The fact that defendant was the only person pictured having cuts and bruises on his face and wearing dark clothing did not cause the identification procedure to be unduly suggestive since Ms. Hales had not described the perpetrator as having these distinguishing features. It does not appear that the identification procedure was in any other way suggestive or improper. Since the pre-trial identification procedure was not impermissibly suggestive, it follows *a fortiori* that Ms. Hales' in-court identification of defendant was not tainted thereby. *See State v. Hannah*, 312 N.C. 286, 322 S.E. 2d 148 (1984); *State v. Melvin*, 53 N.C. App. 421, 281 S.E. 2d 97 (1981), *cert. denied*, 305 N.C. 762, 292 S.E. 2d 578 (1982). Accordingly, we find no error in the admission of Ms. Hales' identification testimony.

[2] Defendant next contends the court erred in allowing a witness, Robert Huth, to testify for the State on rebuttal regarding an incident with defendant which occurred on 26 February 1984. Defendant denied any involvement with the robbery and presented evidence showing that he was at his apartment with a friend when the robbery occurred. Defendant's testimony also tends to show the following: Defendant was employed as a driver for Domino's from October, 1983 until December, 1983. In December, 1983, defendant had a fight with another employee of Domino's. Defendant terminated his employment with Domino's two days later. He indicated that he had trouble with employees or managers of Domino's several times in the past. After he terminated his employment with Domino's, defendant occasionally ordered a pizza from Domino's under a different name. At all times relevant to this action, Robert Huth was the owner of Domino's and in charge of the business. On 26 February 1984, defendant ordered a pizza from Domino's using a different name and gave as his address the address of the house across the street from where he was living. Huth delivered the pizza. When Huth arrived, defendant met him in the street and told him he had to get some money. Defendant

left briefly. When he returned, he told Huth he could not get the pizza.

In rebuttal of defendant's evidence, Huth testified about the 26 February 1984 incident with defendant. Huth's testimony shows the following, in pertinent part: The order placed by defendant on 26 February 1984 attracted Huth's attention because it was allegedly called in from a house across the street from where defendant was staying. Huth determined that the pizza had not been ordered by the people living at the address given but, nevertheless, instructed that the pizza be made. When Huth drove to the address to which he was to deliver the pizza, he saw a person in the street. He asked the person if he had ordered the pizza. Huth then recognized the person as defendant. Huth did not immediately recognize defendant because defendant was wearing dark-rimmed, thick-lensed eyeglasses, had a "fu manchu" mustache drawn on his face which extended to the base of his jaw, had a cap pulled down tightly over his head so that it almost reached the top of his eyeglasses, and had his collar turned up on his coat. Huth had never previously seen defendant with any facial hair or wearing eyeglasses. Defendant and Huth talked briefly, then defendant left to get money for the pizza. When he returned, he told Huth he did not have the money. Defendant did not respond when Huth asked him why he had ordered the pizza when he did not have money to pay for it.

Defendant contends that Huth's rebuttal testimony was irrelevant; that any probative value of the testimony was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; and that its admission constitutes prejudicial error. He further asserts that this testimony should not have been admitted even if offered by the State to show the identity of the robber because more accurate means of establishing the robber's identity were available to the State.

N.C. Gen. Stat. § 8C-1, Rule 404(b) of the N.C. Rules of Evidence (1983 Cum. Supp.) provides: "Evidence of other . . . acts is not admissible to prove the character of a person . . . to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." This provision is consistent

with the practice in this State prior to adoption of N.C. Gen. Stat. § 8C-1, the N.C. Rules of Evidence. *See* Commentary to G.S. § 8C-1, Rule 404(b). *See also* 1 Brandis, *N.C. Evidence* § 111 (2d rev. ed. 1982 and 1983 Supplement). If such evidence is offered to prove something other than character, the trial court must determine whether the risk of undue prejudice outweighs the probative value of the evidence, in view of the availability of the other means of proof. *See* Commentary to G.S. § 8C-1, Rule 404(b).

The evidence in question here was clearly relevant and competent for purposes other than to show defendant's character. Because of certain similarities between the robbery and the 26 February 1984 incident, Huth's rebuttal testimony was particularly relevant to show identity and plan. The risk of undue prejudice resulting from the admission of the evidence was relatively slight and does not appear to have outweighed the probative value of the evidence, even in view of the possible availability of other means of proof. We therefore find no error in the admission of this evidence.

[3] Defendant contends the trial court erred in denying his motion to dismiss the charge at the conclusion of the evidence when substantial evidence was not presented to show that he endangered or threatened the life of Ms. Hales. Defendant correctly notes that mere possession of a firearm during the course of a robbery is insufficient to support a conviction for robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87 (1981); rather, the statute requires both possession and an act with the weapon which endangers or threatens the life of the victim. *See State v. Gibbons*, 303 N.C. 484, 279 S.E. 2d 574 (1981).

The evidence shows that the robber held a gun in his hands parallel to the car within six inches to one foot from Ms. Hales' face during the robbery, that he showed Ms. Hales that he had a gun, and told her that she would not get hurt if she stayed calm and did as he directed. Such conduct by defendant constituted a threatened use of a firearm which endangered or threatened Ms. Hales' life within the meaning of G.S. § 14-87. *See State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984); *State v. Melvin*, 53 N.C. App. 421, 281 S.E. 2d 97 (1981), *cert. denied*, 305 N.C. 762, 292 S.E. 2d 578 (1982). Sufficient evidence of this element of the

offense was therefore presented to justify submission of the case to the jury. Accordingly, we find no error in the denial of defendant's motion to dismiss.

[4] Lastly, defendant contends the court erred in refusing to give certain additional instructions in response to a question from the jury. After deliberating a short while, the jury requested re-instructions on the definitions of robbery with a firearm and common law robbery. The court reinstructed on the definitions of the offenses but refused to reinstruct that "mere possession of a firearm does not by itself constitute endangering or threatening the life of the victim" as requested by defendant. The instruction requested by defendant was included in the court's original charge to the jury.

N.C. Gen. Stat. § 15A-1234 (1983) provides that the court may give appropriate additional instructions to "[r]espond to an inquiry of the jury made in open court." The court is not required to repeat instructions which were previously given to the jury in the absence of some error in the charge but may do so in its discretion. *State v. Hockett*, 309 N.C. 794, 309 S.E. 2d 249 (1983). *See also State v. Southern*, 71 N.C. App. 563, 322 S.E. 2d 617 (1984), *aff'd*, 314 N.C. 110, 331 S.E. 2d 688 (1985). We find no abuse of the court's discretion here in refusing to give the reinstructions requested by defendant and thus no error.

No error.

Chief Judge HEDRICK and Judge WEBB concur.