DAVIS, Judge.
 

 *502
 
 The primary issue in this appeal is whether a defendant charged with armed robbery is entitled to a jury instruction on the lesser-included offense of common law robbery where there is no evidence that the gun held by the defendant was actually pointed at the victim or that the victim actually feared for her life upon observing the gun. Regis Lee Wright ("Defendant") was convicted of armed robbery based on evidence showing that he entered three convenience stores with a gun in his hand and stole money in the presence of the stores' clerks. Because the State introduced uncontradicted evidence satisfying each element of armed robbery, we hold that no instruction on common law robbery was required.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to show the following facts: Defendant was charged with four counts of robbery with a dangerous weapon stemming from robberies occurring at four convenience stores in Shelby, North Carolina. The facts regarding each robbery are summarized below:
 

 I. The Kangaroo Express Robbery
 

 In the morning hours of June 29, 2014, Betty Buehner was working as a clerk at the Kangaroo Express at the intersection of Interstate 74 and Beaver Dam Church Road. At approximately 5:00 a.m., Defendant entered the store wearing a bandana and toboggan over his face and head so that only his eyes were visible. Buehner was cleaning the bathrooms in the back of the store and did not hear Defendant enter.
 

 Buehner testified as follows:
 

 Well, the door opened and somebody nudged me and said, go to your register. I thought he wanted gas or something. I said, okay, I will be there in just a minute. He said, this is [sic] robbery. And he said, I don't want to hurt you, just go to the register. I looked at him and said, you're kidding. He said, no. I said, I will not. If you want it, go get it yourself. I got to get this trash out. So he went to the register and I was still getting my trash out. I got
 
 *787
 
 the trash out of that [sic] while he was up there trying to get into the register.
 

 *503
 
 As Defendant walked back to the register, Buehner observed a gun in Defendant's right hand. Buehner also testified that at some point during the incident Defendant told her he had a gun.
 

 Upon approaching the cash register, Defendant tried unsuccessfully to open it. Buehner then told him: "[Y]oung man you better hurry because there are going to be people coming in." Shortly thereafter, Buehner heard Defendant leave the store. After he left, Buehner realized Defendant had taken a "box of pennies" that had been sitting near the register. She also testified that it was possible that he took a "roll" of quarters. At that point, Buehner called the police.
 

 During her testimony, Buehner stated that during her encounter with Defendant she was "never scared" and that Defendant did not actually point the gun at her. When asked on re-cross-examination if Defendant had threatened her, she stated: "Well, he threatened me at first, but I don't think he meant it."
 

 II. Mike's Food Store Robbery
 

 On the morning of July 6, 2014, Mary Brock was working the cash register at Mike's Food Store on Earl Road. At approximately 11:30 a.m., Defendant "c[a]me in[to] the store with a gun." He was wearing a black ski mask and hospital gloves. Brock testified that she "automatically put [her] hands up because as soon as he c[a]me in the door, you could see the gun." Defendant approached the register and told Brock to "give [him] the money." Brock removed the cash register drawer and put it on the counter. Defendant told her that he also wanted the money in the "lottery drawer" and ordered her to "hurry up." Brock was unable to remove the drawer so she started "grabbing the money and throwing it up on the counter for him." She told Defendant: "[D]on't hurt me, I got kids." Defendant took all of the money from the counter and left. When asked during cross-examination whether Defendant had actually pointed the gun at her, she responded that he had not done so.
 

 Christopher Surratt was buying lottery tickets at Mike's Food Store at the time of the robbery. Surratt testified that Defendant "came in and had the gun in his hand." Upon seeing Defendant enter the store with the gun, he backed away from the counter. Surratt testified that he could tell Brock was terrified during this incident.
 

 III. The Fastop Robbery
 

 On the morning of June 29, 2014, James Stegall was working as a clerk at a Fastop on East Dixon Boulevard. At approximately 5:30 a.m., Defendant entered the store with his face and head covered and
 
 *504
 
 approached the counter where Stegall was working. Defendant "laid across the counter with a gun in his hand and said give it up." Stegall took a step back and put his hands up. He noticed the gun was a "grayish color" and testified that Defendant pointed the gun at him "a couple of times." Stegall then "walked to the [cash] register, pushed the button, opened the drawer, and stepped back." Defendant reached across the counter, removed the money from the register, and left the store. Stegall then proceeded to call the police.
 

 IV. The One Stop Food Store Robbery
 

 During the early morning hours of July 23, 2014, Quanisha Logan and Theodore Davis were working as cashiers at the One Stop Food Store on the corner of White and Fallston Roads. At approximately 2:00 a.m., Defendant entered the store with his face and head covered and a black gun in his right hand. He told Logan and Davis to "put all the money in the bag." Both of them opened their registers and handed Defendant the money inside. Defendant left the store with over $150.
 

 * * *
 

 Defendant was subsequently arrested and indicted on four counts of robbery with a dangerous weapon. Beginning on 11 April 2016, a jury trial was held before the Honorable Daniel A. Kuehnert in Cleveland County Superior Court. The State presented testimony from Buehner, Stegall, Brock, Surratt, Logan, and Davis as well as from several law enforcement officers who had investigated the robberies.
 

 *788
 
 At the close of the State's evidence, the following exchange occurred:
 

 [DEFENDANT'S COUNSEL]: I'm not going to make an argument. I would just make the standard motion to dismiss at the end of State's evidence.
 

 ....
 

 THE COURT: You're probably pushing it in this direction in your questioning, Mr. Gilbert, and [sic] raised a question in my mind. The fact that-it sounded like the evidence, at least on a few occasions, the defendant didn't point the gun directly at individuals, that he may not have held a gun to somebody's head and said, give me the money or anything like that. There were statements that people were threatened or felt threatened. Some of the law that-I decided to do a little bit of research while you were asking those questions. The mere fact that the gun
 
 *505
 
 was shown and was present and the circumstances of the situation-as I looked at the little bit of law, it looks like it meets the threshold, to meet all the elements necessary for an armed robbery. So I'm sort of anticipating that that might be an issue and I just will let you know that had you emphasized that or argued about it, and I knew you were headed in that direction, that I have looked at and you probably knew this before.... That's probably the one weakness that you look at say, [sic] where's the threat?
 

 [DEFENDANT'S COUNSEL]: My practice is not to belabor an issue unless it needs to be belabored. And in this case I can't really argue with any passion that the case ought to be dismissed.... I think there is a scintilla.
 

 The trial court then denied Defendant's motion to dismiss. The court proceeded to instruct the jury solely on the offense of armed robbery. The jury returned a verdict finding Defendant guilty with regard to the robberies at the Kangaroo Express, Mike's Food Store, and the Fastop. The jury found Defendant not guilty as to the robbery at the One Stop Food Store.
 

 The trial court sentenced Defendant to a term of 68 to 94 months imprisonment for the Fastop robbery along with a consecutive term of 68 to 94 months for the Mike's Food Store robbery and a concurrent term of 68 to 94 months for the Kangaroo Express robbery. Defendant gave oral notice of appeal.
 
 [1]
 

 Analysis
 

 On appeal, Defendant argues that (1) the trial court committed plain error in failing to instruct the jury on the lesser-included offense of common law robbery; and (2) he was deprived of effective assistance of counsel as a result of his trial counsel's failure to request an instruction on common law robbery and to move for dismissal of the charge stemming from the Kangaroo Express robbery based specifically upon the insufficiency of the evidence. We address each argument in turn.
 

 I. Instruction on Common Law Robbery
 

 In his first argument, Defendant contends that with regard to the Kangaroo Express and Mike's Food Store robberies, the State failed to
 
 *506
 
 establish that Defendant's use of a dangerous weapon actually threatened or endangered the life of the victims. Because such evidence is essential to the offense of armed robbery, Defendant argues, the lack of proof offered by the State on this issue required the trial court to instruct the jury on the lesser-included offense of common law robbery.
 

 Because Defendant failed to object to the trial court's jury instructions, our review of this issue is limited to plain error.
 
 See
 
 N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental
 
 *789
 
 error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted). Our Supreme Court has held that "even when the 'plain error' rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660-61,
 
 300 S.E.2d 375
 
 , 378 (1983) (citation, quotation marks, and brackets omitted).
 

 It is well settled that a defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it. The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.
 

 State v. Covington
 
 , --- N.C.App. ----, ----,
 
 788 S.E.2d 671
 
 , 675 (2016) (citation omitted).
 

 *507
 
 Our prior caselaw makes clear that "[t]he trial court is not obligated to give a lesser included instruction if there is no evidence giving rise to a reasonable inference to dispute the State's contention."
 
 State v. Lucas
 
 ,
 
 234 N.C.App. 247
 
 , 256,
 
 758 S.E.2d 672
 
 , 679 (2014) (citation, quotation marks, and ellipses omitted). "Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process."
 
 State v. Leazer
 
 ,
 
 353 N.C. 234
 
 , 237,
 
 539 S.E.2d 922
 
 , 924 (2000) (citation and quotation marks omitted).
 

 "The elements of armed robbery are: (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened."
 
 [2]
 

 State v. Hill
 
 ,
 
 365 N.C. 273
 
 , 275,
 
 715 S.E.2d 841
 
 , 843 (2011) (citation and quotation marks omitted). The elements of common law robbery are "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear."
 
 State v. Smith
 
 ,
 
 305 N.C. 691
 
 , 700,
 
 292 S.E.2d 264
 
 , 270,
 
 cert. denied
 
 ,
 
 459 U.S. 1056
 
 ,
 
 103 S.Ct. 474
 
 ,
 
 74 L.Ed.2d 622
 
 (1982).
 

 Defendant's argument essentially has two components. First, he contends that the State failed to present substantial evidence of the third element of armed robbery-whether the victim's life was endangered or threatened-with respect to either the Kangaroo Express robbery or the Mike's Food Store robbery because no evidence was presented that Defendant actually pointed his gun at Buehner or Brock. Second, he points to the lack of evidence during the Kangaroo Express robbery showing that Buehner genuinely feared for her life in light of her testimony that she was "never scared." As discussed below, we reject both of these contentions.
 

 A. Pointing of the Gun
 

 It is well established that a defendant's mere possession of a weapon-without more-during the course of a robbery is insufficient to support a finding that the victim's life was endangered or threatened.
 
 State v. Gibbons
 
 ,
 
 303 N.C. 484
 
 , 488,
 
 279 S.E.2d 574
 
 , 577 (1981) ;
 
 see also
 

 State v. Whisenant
 
 , --- N.C.App. ----, ----,
 
 791 S.E.2d 122
 
 , 125 (2016) ("The State must present evidence that the defendant endangered or threatened the life of the victim by possession of the weapon, aside from the mere
 
 *508
 
 fact of the weapon's presence." (citation, quotation marks, and brackets omitted)),
 
 disc. review
 

 *790
 

 denied
 
 , --- N.C. ----,
 
 793 S.E.2d 702
 
 (2016).
 

 In the present case, Defendant argues that because the State did not present evidence that Defendant actually pointed his gun at Buehner or Brock, this case falls within the "mere possession" line of cases, thereby entitling him to an instruction on common law robbery. However, the cases Defendant cites in support of this argument all involved circumstances where a perpetrator possessed a weapon but neither the victim nor bystanders actually saw the weapon during the course of the robbery.
 
 See, e.g.
 
 ,
 
 Gibbons
 
 ,
 
 303 N.C. at 490
 
 ,
 
 279 S.E.2d at 578
 
 (although perpetrators acknowledged in their testimony that they possessed shotgun during robbery, no evidence was presented that victim ever saw gun);
 
 State v. Evans
 
 ,
 
 279 N.C. 447
 
 , 455,
 
 183 S.E.2d 540
 
 , 545-46 (1971) (victim's life was not endangered or threatened where co-conspirator left restaurant with shotgun that victim never saw and defendant subsequently made threats to victim during time period when shotgun was not present);
 
 State v. Dalton
 
 ,
 
 122 N.C.App. 666
 
 , 671,
 
 471 S.E.2d 657
 
 , 661 (1996) (victim's purse was taken while she was asleep and thus "she could not have known of the presence of the [defendant's] knife and could not have been induced by it to part with her purse").
 

 However, our appellate courts have held that in cases where the State's evidence establishes that a defendant held a dangerous weapon that was seen by the victim or a witness during the course of the robbery, the third element of armed robbery is satisfied.
 
 See, e.g.
 
 ,
 
 State v. Blair
 
 ,
 
 181 N.C.App. 236
 
 , 242,
 
 638 S.E.2d 914
 
 , 919 (defendant endangered or threatened victim's life where officer saw defendant holding knife immediately after stealing wallet even though victim had not seen knife prior to robbery),
 
 appeal dismissed and disc. review denied
 
 ,
 
 361 N.C. 570
 
 ,
 
 650 S.E.2d 815
 
 (2007) ;
 
 State v. Melvin
 
 ,
 
 53 N.C.App. 421
 
 , 433,
 
 281 S.E.2d 97
 
 , 105 (1981) (defendant endangered or threatened victim's life where he held gun during robbery and demanded money),
 
 cert. denied
 
 ,
 
 305 N.C. 762
 
 ,
 
 292 S.E.2d 578
 
 (1982).
 

 We find particularly instructive our opinion in
 
 Melvin
 
 . In that case, the State presented evidence that the defendant entered a store, told the victim that "he wanted the money that [she] had in the store[,]" and placed a gun on the counter with his hand over it.
 
 Id.
 
 at 433,
 
 281 S.E.2d at 105
 
 . On appeal, the defendant argued that the State's evidence "did not reveal that at any time during the commission of the robbery defendant ever actually threatened the victim with harm nor did the evidence reveal that he endangered the victim by the use or threatened use of a firearm."
 
 Id.
 
 at 432,
 
 281 S.E.2d at 104
 
 . However, this Court ruled that
 
 *509
 
 "[t]he evidence shows that defendant robbed [the victim] while holding a pistol in his hand. We think this is ample proof of this element of the crime."
 
 Id.
 
 at 433,
 
 281 S.E.2d at 105
 
 . Thus, we held that "[t]here was sufficient evidence of each of the elements of armed robbery and that defendant was the perpetrator of the armed robbery to justify the trial court's denial of his motion to dismiss."
 

 Id.
 

 Here, as in
 
 Melvin
 
 , the uncontradicted evidence presented at trial showed that Defendant held a gun in his hand while robbing both the Kangaroo Express and Mike's Food Store. Buehner testified that during the Kangaroo Express robbery, she observed Defendant holding a gun in his right hand before he attempted to open the cash register. Similarly, Surratt testified that Defendant entered Mike's Food Store with a gun in his hand. Defendant has failed to cite any case involving similar facts in which North Carolina's appellate courts have held either that the third element of armed robbery was not satisfied
 
 or
 
 that the failure to give an accompanying instruction on the lesser-included offense of common law robbery constituted error.
 

 B. Victim's Fear for Her Life
 

 With regard to the Kangaroo Express robbery, Defendant contends that because Buehner continued cleaning after he told her that he was robbing the store and testified that she was not scared during the incident, her life was not endangered or threatened by Defendant's possession of the gun. However, our Supreme Court has previously rejected similar arguments.
 

 *791
 
 In
 
 State v. Joyner
 
 ,
 
 295 N.C. 55
 
 ,
 
 243 S.E.2d 367
 
 (1978), the defendant argued on appeal that the trial court had erred by denying his motion for nonsuit on the charge of armed robbery. He contended that the State failed to prove the victim's life was endangered or threatened because the victim did not show that she was "in fear for her life at the time she surrendered her [property]...."
 
 Id.
 
 at 62,
 
 243 S.E.2d at 372
 
 . The Supreme Court rejected this contention, holding that "there was a threatened use of a dangerous weapon which endangered or threatened the life of the victim."
 
 Id.
 
 at 63,
 
 243 S.E.2d at 373
 
 (emphasis omitted). In its opinion, the Court made clear that "the State did not have to prove such fear to overcome defendant's motion for nonsuit."
 

 Id.
 

 In
 
 Hill
 
 , the defendant was convicted of armed robbery where the evidence established that he brandished a knife and caused the victim to sustain injury as a result of his actions during the course of the robbery. The defendant argued on appeal that the evidence failed to show that he endangered or threatened the victim's life because the victim's
 
 *510
 
 testimony did "not indicate that he was afraid of or felt threatened by the robber."
 
 Hill
 
 , 365 N.C. at 279,
 
 715 S.E.2d at 845
 
 . Our Supreme Court held that the elements of armed robbery were satisfied and reiterated its prior holding in
 
 Joyner
 
 that the third element of armed robbery does not depend on "whether the victim was scared or in fear of his life."
 

 Id.
 

 (citation, quotation marks, and emphasis omitted). Thus, the Court concluded, the evidence was sufficient to establish that the victim's life was "endangered or threatened by the robber's possession, use or threatened use of a dangerous weapon, namely a knife."
 

 Id.
 

 (citation and quotation marks omitted).
 

 * * *
 

 For these reasons, we are satisfied that the State presented uncontradicted evidence establishing the elements of armed robbery for both the Kangaroo Express and Mike's Food Store robberies. Accordingly, Defendant has failed to show that the trial court erred by not instructing the jury on common law robbery.
 
 See
 

 Covington
 
 , --- N.C.App. at ----,
 
 788 S.E.2d at 677
 
 ("[W]e hold that the trial court did not err at all-much less commit plain error-by failing to instruct the jury on the lesser-included offense....").
 

 II. Ineffective Assistance of Counsel
 

 Defendant's final argument is that he received ineffective assistance of counsel because of his trial counsel's failure to (1) request an instruction on the lesser-included offense of common law robbery with regard to the charges arising from the Kangaroo Express and Mike's Food Store robberies; and (2) make a specific motion to dismiss the charge of armed robbery as to the Kangaroo Express robbery. We disagree.
 

 In order to prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 State v. Edgar
 
 , --- N.C.App. ----, ----,
 
 777 S.E.2d 766
 
 , 770-71 (2015) (internal citations and quotation marks omitted). "In considering ineffective
 
 *511
 
 assistance of counsel claims, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."
 
 State v. Turner
 
 ,
 
 237 N.C.App. 388
 
 , 396,
 
 765 S.E.2d 77
 
 , 84 (2014) (citation and brackets omitted),
 
 disc. review denied
 
 ,
 
 368 N.C. 245
 
 ,
 
 768 S.E.2d 563
 
 (2015).
 

 Here, as shown above, Defendant was not entitled to a jury instruction on common law robbery as to either of these two charges because the State presented uncontradicted evidence of each element of the offense of armed robbery. Thus, it would have been futile for his trial counsel to request such an instruction or to move for the
 
 *792
 
 dismissal of the armed robbery charge relating to the Kangaroo Express robbery on a theory of insufficiency of the evidence. Accordingly, Defendant cannot establish a valid ineffective assistance of counsel claim.
 
 See
 

 Covington
 
 , --- N.C.App. at ----,
 
 788 S.E.2d at 678
 
 (holding that defendant was not deprived of effective assistance of counsel based on his attorney's failure to request jury instruction on lesser-included offense).
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge McCULLOUGH concur.
 

 [1]
 

 Defendant's appeal relates solely to his convictions stemming from the robberies at the Kangaroo Express and Mike's Food Store.
 

 [2]
 

 Defendant makes no argument in this appeal that the gun he was holding during the robberies was not, in fact, a real gun. Nor does he contend that the gun was inoperable or unloaded.